[Bar Misc. No. 1609. In Bank.—November 4, 1940.]

In the Matter of the Disbarment of DONALD A. ROTH-ROCK, an Attorney at Law.

Donald A. Rothrock, *in pro. per.,* Josiah Coombs, William L. Southwell and J. M. Frame for Petitioner.

Philbrick McCoy and Claude Minard for Respondent.

THE COURT.—On November 22, 1939, a certified copy of the record of the conviction of Donald A. Rothrock, an attorney at law, on a charge of assault with a deadly weapon (Pen. Code, sec. 245) was filed in this court. It was filed pursuant to sections 6101 and 6102 of the Business and Professions Code (added by Stats. 1939, p. 357, formerly section 288, Code Civ. Proc.). The record shows that on October 30, 1939, in the action of the *People of the State of California* v. *Donald A. Rothrock*, No. 61939, pending in the superior court, in and for the county of Los Angeles, the defendant therein pleaded "guilty" to count three of an information filed October 7, 1935, charging assault with a deadly weapon, committed in the county of Los Angeles on September 12, 1935. The court sentenced the defendant to serve two months in the county jail. The judgment of conviction has become final and the sentence imposed upon the defendant has been served.

Section 6101 of the Business and Professions Code provides:

"Conviction of a felony or misdemeanor, involving moral turpitude, constitutes a cause for disbarment or suspension as provided in section 6102.

"The record of conviction shall be conclusive evidence and the clerk of the court in which the conviction is had shall, within thirty days thereafter, transmit a certified copy of the record of conviction to the Supreme Court. The proceedings to disbar or suspend an attorney shall be undertaken by the court upon the receipt of the certified copy of the record of conviction.

"A plea or verdict of guilty is deemed to be a conviction within the meaning of this section."

Section 6102 provides:

"Upon the receipt of the certified copy of the record of conviction of an attorney of a crime involving moral turpitude, the court shall suspend the attorney until judgment in the case becomes final. When a judgment of conviction becomes final, the court shall order the attorney disbarred.

"The other provisions of this article providing a procedure for the disbarment and suspension of an attorney do not apply to an attorney convicted of a crime involving moral turpitude, unless expressly made applicable."

On January 5, 1940, the attorney, referred to herein as the "petitioner", or as the "defendant", moved to dismiss

the proceeding herein on the ground that the crime of which he was convicted did not involve moral turpitude. After several postponements of the hearing granted at the request of the petitioner, the matter was submitted on the argument of counsel for the petitioner and counsel for The State Bar and on the briefs filed by the petitioner.

A short *résumé* of the proceedings which took place before the entry of the judgment of conviction will serve to indicate the reason for the lapse of time between the filing of the information and the entry of the plea of guilty to the third count thereof.

Count 1 of the information charged that on September 12, 1935, the defendant attempted to murder one Golda Draper, and that at the time of the commission of the offense he was armed with a revolver. Count 2 charged a similar attack upon one John H. Ganzenbuher. Count 3 charged assault with a deadly weapon, a revolver, upon George Zaris. On October 16, 1935, the defendant entered a plea of ''not guilty''. On January 22, 1936, after trial by the court sitting without a jury, the defendant was adjudged guilty on all counts and was found to have been armed as charged in the information. On the same day the defendant made an oral motion for a new trial, which was continued to January 31, 1936, for argument.

The proceedings from this point are reflected in the decisions in *People* v. *Rothrock*, 8 Cal. (2d) 21 [63 Pac. (2d) 807] (Dec. 17, 1936); *People* v. *Rothrock*, 21 Cal. App. (2d) 116 [68 Pac. (2d) 364] (May 20, 1937); *In re Rothrock*, 14 Cal. (2d) 34 [92 Pac. (2d) 634] (July 12, 1939); and in the minutes of this court in the *Matter of the Disbarment of Donald A. Rothrock*, Misc. 1497. By the decision first cited this court denied a motion to dismiss an appeal taken by the People from an order of the trial court setting aside its findings of guilty on each of the three counts and continuing the case for arraignment and plea. The order was reversed with directions to enter judgment in accordance with the finding of the court. The disposition of the appeal was based upon the supposed showing in the record that there was no motion for a new trial pending before the court at the time the order was entered. Upon the going down of the *remittitur* the trial court on February 3, 1937, entered its judgment of conviction on all three counts and sentenced the defendant to imprisonment in the state prison at San Quentin for

the term prescribed by law, the sentences on all counts to run concurrently. The defendant was thereupon committed in accordance with the judgment.

The decision by the District Court of Appeal (21 Cal. App. (2d) 116 [68 Pac. (2d) 364]) disposed of the merits of the appeal from the judgment of conviction by affirming the judgment. On June 21, 1937, this court entered an order based on the purported final judgment of conviction, removing Donald A. Rothrock from his office as an attorney at law.

On August 12, 1939, pursuant to order of this court, the *remittitur* theretofore issued on the determination of the appeal (8 Cal. (2d) 21 [63 Pac. (2d) 807]) from the order setting aside the findings of the trial court was recalled. (*In re Rothrock,* 14 Cal. (2d) 34 [92 Pac. (2d) 634].) The recall was ordered because of the mistake of fact made by this court in assuming that the defendant had not made a motion for a new trial, whereas such a motion had been made and was disposed of. The *remittitur* was corrected to accord the defendant a new trial.

On August 23, 1939, this court set aside its former order of disbarment and declared the status of Rothrock to have been unaffected by said order of disbarment.

The further proceedings in the trial court, as hereinabove noted, resulted in the judgment of conviction entered on the plea of guilty to the third count of the information, charging assault with a deadly weapon upon George Zaris.

The petitioner contends that the offense of assault with a deadly weapon does not involve moral turpitude within the meaning of the foregoing sections of the Business and Professions Code.

This court has heretofore adopted definitions of moral turpitude as applied to an attorney's conduct. Those definitions have been held applicable either in relation to professional misconduct or the commission by an attorney of a crime. (*Matter of Humphrey,* 174 Cal. 290 [163 Pac. 60]; *In re O'Connell,* 184 Cal. 584 [194 Pac. 1010]; *Lantz* v *State Bar,* 212 Cal. 213 [298 Pac. 497]; *Jacobs* v. *State Bar,* 219 Cal. 59 [25 Pac. (2d) 401]; *In re Hatch,* 10 Cal. (2d) 147 [73 Pac. (2d) 885]; *In re Craig,* 12 Cal. (2d) 93 [82 Pac. (2d) 442].)

It has been stated that the commission of an intentional and wilful criminal act is indicative of an unfitness to be

intrusted with the administration of the law, and that generally the conviction of a felony or other infamous crime is cause for disbarment. It is also stated, however, that where the courts have the power to investigate into the nature of the act, the attorney's name will not be stricken from the rolls where the nature of the particular crime does not reflect a bad moral character with respect to the duties of the attorney's profession. (See notes, 45 Am. St. Rep., pp. 76–77, and cases cited; 5 Am. Jur., pp. 428–429, and cases cited.)

The legislature of this state by the adoption of the foregoing code sections has recognized that a violation of the law, without more, does not necessarily brand the attorney committing the same as a person unfit to practice law. It has thus added the further requirement that in the commission of the crime moral turpitude must be involved. The legislature has made the record of conviction conclusive, but it has left to the courts the duty of deciding whether the particular crime involves moral turpitude. In cases such as those involving convictions of murder, forgery, extortion, bribery, perjury, robbery, embezzlement and other forms of theft, no difficulty would attend the determination of the question of moral turpitude from a consideration of the record of conviction alone.

The courts do not appear to have decided the question whether the conviction of an attorney on the charge of assault with a deadly weapon will require his disbarment on the ground that the offense involves moral turpitude. In *In re Hatch, supra,* this court stated that a conviction of simple assault and battery might indicate that moral turpitude was not involved. In the final analysis the purpose of any disbarment proceeding is not to punish the attorney— in the case of a criminal act he is amenable to punishment under the penal statutes—but is to afford protection to the public and to the profession by an investigation respecting the moral fitness of the attorney to continue in the practice of the law. (*In re Vaughan,* 189 Cal. 491 [209 Pac. 353, 24 A. L. R. 858] ; *Ex parte Wall,* 107 U. S. 265, 288 [2 Sup. Ct. 569, 27 L. Ed. 552].) The author of the note cited *supra* (45 Am. St. Rep., at p. 77; see, also, 2 R. C. L., p. 1100) cites decisions recognizing that it is not every criminal act which will justify a disbarment, and to the effect that "acts merely discreditable, but not infamous and not connected

with an attorney's duties, did not justify the striking his name from the rolls''. The author comments: "To this, however, we cannot assent without adding the qualification that the discreditable acts must be .such that it may fairly be inferred that, though the attorney is guilty of them, his moral character is not such as will probably lead him into an abuse of the privileges of his profession, or a disregard of his duties either to the court or to his clients.'' ▮ Such a test appears proper to be applied in the case of any conviction where it cannot be said that the attorney is thereby stamped with infamy to such an extent that to retain his name on the rolls would reflect discredit upon the bar and the courts and lower the prestige of the profession. Thus this court, in *In re Jacobsen,* 202 Cal. 289 [260 Pac. 294], indicated that the moral turpitude involved in the commission of a crime by an attorney should be such as would be ''calculated to injure his reputation for the performance of the important duties which the law enjoins''. Therefore, in convictions presenting doubtful cases on the question of moral turpitude, where the perpetrator of the offense is an attorney, the question whether the act involves moral turpitude properly may be resolved by a consideration of the nature of the offense as it bears upon his moral fitness to continue in the practice of the law. A consideration alone of the nature of the offense, therefore, may disclose that conviction thereof would not result in loss of the respect and confidence of his fellow-men, if his name be continued on the roll of attorneys. If that be the result of the consideration of the record of conviction alone, the conclusion may well be determinative of the question of moral turpitude, and the offense of which the attorney was convicted will be held not to involve moral turpitude. If, however, the nature of the offense, considered alone or in connection with the record of conviction and the statutes defining the particular offense, does not disclose that the commission thereof would or would not cast discredit upon the attorney's moral fitness to practice law, then an investigation into the circumstances will be permitted. *In re Hatch, supra,* and *In re Richardson,* 15 Cal. (2d) 536 [102 Pac. (2d) 1076], were such cases.

The question whether under particular statutes the crime of assault with a deadly weapon involves moral turpitude does not appear to have been decided in this state, but has had some consideration in other jurisdictions.

In *Ex parte George,* 180 Fed. 785 (deportation under the immigration laws) the alien was convicted ''of a felonious assault and sentenced to four months imprisonment''. The ''assault consisted of his act in striking in a quarrel another Greek with a large piece of firewood. At the same time the brother of petitioner stabbed the same person with a knife.'' The court said: ''It [the assault] certainly does not constitute a misdemeanor involving moral turpitude.''

In *Weedin* v. *Yamada,* 4 Fed. (2d) 455 (Wash.), the court upheld an order of deportation in a case where a Japanese subject had pleaded guilty to a charge of ''assault with a deadly weapon, instrument or other thing, with an intent to inflict upon the person of another a bodily injury, where ,no considerable provocation appears, or where the circumstances of the assault show a wilful, malignant, and abandoned heart'', under a statute which so defined the crime. The court said: ''Such a crime, in our opinion, involves moral turpitude beyond any question.''

In *United States* ex rel. *Morlacci* v. *Smith,* 8 Fed. (2d) 663 (New York) the court, in deciding that the crime of ''second degree assault'' involved moral turpitude, observed that mere assault and battery concededly did not involve such a degree of depravity (see, also to the same effect *Gillman* v. *State,* 165 Ala. 135, 51 So. 722, and *Pollok* v. *State,* (Ct. Cr. App. Tex.), 101 S. W. 231, involving conviction of assault and battery as affecting credibility of witnesses), ''but an assault with a dangerous weapon, in this case a revolver, and shooting the person, is simply an act which includes something done by the assailant contrary to good morals and proper conduct. Society is entitled to protection from willful acts of that description which frequently result in more serious injury and conseqences than that following the commission of the offense in question . . . it is doubtful whether this court has the power to examine the circumstances upon which the conviction and sentence were based.''

In *United States* ex rel. *Ciccerelli* v. *Curran,* 12 Fed. (2d) 394, a subject of Italy was ordered deported on the ground of conviction of a ''criminal assault with a gun''. The court merely observed: ''It seems to be admitted that the crime of assault in the second degree in one involving moral turpitude.''

In *Ciambelli* ex rel. *Maranci* v. *Johnson,* 12 Fed. (2d) 465, also a deportation case, the question was whether a convic-

tion of assault and battery upon a police officer involved moral turpitude. The court observed that the indictment charged that Maranci was armed with a dangerous weapon, a razor, but that it was not charged nor claimed "that the assault was made with the weapon". The court said: "It has been held that simple assault and battery is not a crime involving moral turpitude . . . (citing cases) . . . But an assault is one of those offenses which may, or may not, involve moral turpitude, depending upon the circumstances of the particular case. If one ordinarily law-abiding, in the heat of anger, strikes another, that act would not reveal such inherent baseness or depravity as to suggest the idea of moral turpitude. If, on the other hand, one deliberately assaulted an officer of the law with a dangerous weapon and with felonious intent, or for the purpose of interfering with the officer in the performance of his duty, the attendant circumstances showing an inclination toward lawlessness, the act might well be considered as one involving moral turpitude. Between the two lies the line of demarcation which I do not undertake to define accurately. I only determine which side of the line the facts of this case fall." On the facts in that case the court concluded that the assault did not involve moral turpitude.

In a similar case, *United States* ex rel. *Mazzillo* v. *Day*, 95 Fed. (2d) 391 (New York), involving a conviction of "assault in the second degree", the court also looked into the circumstances of the offense and concluded that an assault on the driver of a cab, inflicting on him a cut on the neck and forcing him to abandon his vehicle, was an offense involving moral turpitude. However, in *United States* ex rel. *Griffo* v. *McCandless*, 28 Fed. (2d) 287 (Penn.), where the alien had been convicted and sentenced for the offense of "aggravated assault and battery", the court concluded that moral turpitude must be inherent in the charge, that it could not go beyond the record, which was conclusive, and that it was not conclusively implied in the charge of aggravated assault and battery. Likewise in *United States* ex rel. *Magiovi* v. *Karnuth*, 30 Fed. (2d) 825 (New York), (conviction of an alien on a plea of guilty to a charge of manslaughter in the second degree), it was held that where the offense as defined by statute did not include an evil intent, or commission of the act wilfully or designedly, the court would not look beyond the charge and statutory definition of the crime for the pur-

pose of deciding whether the offense involved moral turpitude. The court distinguished *Weedin* v. *Yamada* and *United States* ex rel. *Morlacci* v. *Smith, supra,* wherein assault with a deadly weapon was held to involve moral turpitude, on the ground that in those cases the crime of assault with a deadly weapon, as defined in the respective state statutes, was committed with an intent to do bodily harm.

The case of *State* v. *Metcalfe,* 204 Iowa 123 [214 N. W. 874], involved a proceeding to disbar an attorney on charges of assault with intent to commit murder and shooting and wounding one person with a revolver, and an assault with a shotgun and shooting and wounding another person. The attorney had been convicted on both charges, but the convictions in each case had been reversed. The court, citing authorities, held that affirmative action could be taken in the proceeding, although there were no convictions, if the facts warranted such action. It concluded, however, on the facts —the shooting by the attorney occurring in one case during an altercation with his tenants and in the other while protecting his property from chicken thieves—that the circumstances of neither case involved any misconduct within the sphere of duty as an attorney, or any lack of the qualifications of integrity, honesty and fidelity essential to that relation; that "these acts do not of themselves necessarily evince a lack of moral character in respect to the qualities required for the proper discharge of the duties of an attorney, nor, in the absence of a conviction therefor, require his disbarment. A quarrelsome disposition, a hasty and ungoverned temper, and even an unwarranted assertion, under provocation, of a claimed right of defense of self or property, are not necessarily incompatible with truthfulness, faithfulness and integrity."

From the foregoing discussion and review of cases dealing with the question whether the offense of assault with a deadly weapon involves moral turpitude, we arrive at the following conclusions:

██ In the absence of a statutory definition indicating that evil intent is inherent in the commission of the crime, the courts generally are reluctant to classify the crime of assault with a deadly weapon as one involving moral turpitude as a matter of law. Where the question has arisen in disbarment proceedings, such conduct has been deemed not to call for disbarment as a matter of course. A high degree

of moral standards is required of an attorney, but the courts have not been inclined to impute moral turpitude in the commission of the lesser infractions of the penal laws which carry no reflection upon the attorney's moral fitness to practice law. The commission of such lesser offenses by an attorney in the heat of anger or as the result of physical or mental infirmities does not, without more, cast discredit upon the prestige of the legal profession or interfere with the efficient administration of the law and should not be deemed to involve moral turpitude. Our statute (sec. 245, Pen. Code), does not define assault with a deadly weapon so as to indicate that it is an offense which by these tests involves moral turpitude as a matter of law. That it did not involve moral turpitude in the particular case may be reflected by the record of conviction, which is all that is before the court in this proceeding. That record consists of the charge of the offense to which the defendant pleaded guilty; the plea; and the judgment of conviction. (See sec. 1207, Pen. Code; 8 Cal. Jur., p. 474.) The light sentence imposed on the attorney indicates that the trial court was of the opinion that the offense to which a plea of guilty was entered did not involve moral turpitude. Our consideration of the record leads us to the same conclusion.

The motion is granted and the proceeding is dismissed.

Rehearing denied. Gibson, C. J., and Houser, J., voted for a rehearing.