[S.F. No. 25077. Aug. 27, 1987.]

MAXIM N. BACH, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Maxim N. Bach, in pro. per., for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., Richard J. Zanassi and Sherrie B. McLetchie for Respondent.

OPINION

**THE COURT.**—This is a proceeding to review the recommendation of the Review Department of the State Bar Court that petitioner, Maxim N. Bach,

be suspended from the practice of law for one year, that the order of suspension be stayed, and that he be placed on probation for three years on specified conditions including sixty days' actual suspension.[1]

Petitioner was admitted to practice law in January 1970. In 1983, he was publicly reproved for violating Rules of Professional Conduct rule 7-103

---

[1] The full recommendation is that Bach "be suspended from the practice of law in the State of California for a period of one (1) year; that execution of the order for such suspension be stayed and that Respondent be placed upon probation for a period of three (3) years upon the following conditions: [¶] 1. That during the first sixty (60) days of said period of probation, he shall be suspended from the practice of law in the state of California; [¶] 2. That during the period of probation, he shall comply with the provisions of the State Bar Act and Rules of Professional Conduct of the State Bar of California; [¶] 3. That during the period of probation, he shall report not later than January 10, April 10, July 10 and October 10 of each year or part thereof during which the probation is in effect, in writing, to the Office of the Clerk, State Bar Court, Los Angeles, which report shall state that it covers the preceding calendar quarter or applicable portion thereof, certifying by affidavit or under penalty of perjury (provided, however, that if the effective date of probation is less than 30 days preceding any of said dates, he shall file said report on the due date next following the due date after said effective date): [¶] (a) in his first report, that he has complied with all provisions of the State Bar Act and Rules of Professional Conduct since the effective date of said probation; [¶] (b) in each subsequent report, that he has complied with all provisions of the State Bar Act and Rules of Professional Conduct during said period; [¶] (c) provided, however, that a final report shall be filed covering the remaining portion of the period of probation following the last report required by the foregoing provisions of this paragraph certifying to the matters set forth in subparagraph (b) hereof; [¶] 4. That Respondent shall be referred to the Department of Probation, State Bar Court, for assignment of a probation monitor referee. Respondent shall promptly review the terms and conditions of his probation with the probation monitor referee to establish a manner and schedule of compliance, consistent with these terms of probation. During the period of probation, Respondent shall furnish such reports concerning his compliance as may be requested by the probation monitor referee. Respondent shall cooperate fully with the probation monitor to enable him/her to discharge his/her duties pursuant to rule 611, Rules of Procedure of the State Bar; [¶] 5. During the period of probation, Respondent shall maintain with the Office of the Clerk, State Bar Court, Los Angeles, his current office or other address for State Bar purposes and his residence address. Within ten (10) days after any change of any of his addresses, he shall notify the above State Bar office, in writing of the change of address; [¶] 6. That, except to the extent prohibited by the attorney-client privilege and the privilege against self-incrimination, he shall answer fully, promptly and truthfully to the Presiding Referee of the State Bar Court, his designee or to any probation monitor referee assigned under these conditions of probation at the Respondent's office or an office of the State Bar (provided, however, that nothing herein shall prohibit the Respondent and the Presiding Referee, designee or probation monitor referee from fixing another place by agreement) any inquiry or inquiries directed to him personally or in writing by said Presiding Referee, designee, or probation monitor referee relating to whether Respondent is complying or has complied with these terms of probation; [¶] 7. That the period of probation shall commence as of the date on which the order of the Supreme Court herein becomes effective; [¶] 8. That at the expiration of said probation period, if he has complied with the terms of probation, said order of the Supreme Court suspending Respondent from the practice of law for a period of one (1) year shall be satisfied and the suspension shall be terminated; and it is FURTHER RESOLVED that Respondent shall take and pass the Professional Responsibility Examination given by the National Conference of Bar Examiners within one year from the date upon which the order of the Supreme Court herein becomes effective . . . ."

(direct or indirect communication with adverse party represented by counsel).

The facts giving rise to the present disciplinary action are as follows: in July 1983 Bach was representing Michele Edwards in a child support and visitation dispute with her former husband, Allen. On July 1 a hearing was held before Judge Ferroggiaro in the Humboldt Superior Court on Allen's motion to modify visitation and support. Bach did not attend the hearing, but instead advised the court in writing of various jurisdictional objections to the motion. The court referred the matter to the "Child Custody and Mediation Team" for a report, and continued the hearing to August 5 awaiting the mediation results. (See Civ. Code, § 4607, subd. (a) ["In any (contested) proceeding where there is at issue the custody of or visitation with a minor child . . . the matter shall be set for mediation of the contested issues prior to or concurrent with the setting of the matter for hearing . . . ."].)

A copy of the July 1 minute order was served on Bach by mail on July 6. On July 8, Bach wrote to a member of the mediation team (with a copy to Allen's attorney, Dun), stating in essence that he would not instruct his client to attend a mediation in Eureka, because she had no funds to travel from her home in Southern California. Dun filed an ex parte motion with the Humboldt court requesting Michele be ordered to arrange for the mediation. An order issued on July 28, directing Michele to arrange for mediation by contacting the mediation team by August 3.

Immediately before the scheduled August 5 hearing, Dun observed Bach talking to members of the mediation team, and heard him maintain that the team had no right to contact his client to arrange mediation, that to do so would violate the attorney-client privilege, and that if they persisted he would sue them personally. During the subsequent hearing Dun informed the court of Bach's out-of-court conversation with the team, to which Bach responded that neither the court nor the team could contact his client without violating the attorney-client privilege. In essence, Dun observed, Bach sought to frustrate implementation of the mediation scheme mandated by Civil Code section 4607.

Thereafter Judge Buffington "advised" Bach that in the court's view the attorney-client claim was meritless, and that the law required Bach to order his client to attend the mediation meeting. Bach then requested a formal order, and Dun asked the court, "may it be reduced, what you just said, to a written order?" The court responded, "yes."

The court's minutes of the August 5 hearing state: "The Court advised attorney Bach to have his client appear for mediation and the mediation

team may talk to client directly. [¶] Attorney Bach requests that he be served with formal court orders. [¶] Attorney Dun will submit formal order that mediation team may talk to Petitioner directly, however, Judge Ferroggiaro previously signed an order referring the matter to the Custody Team." After the hearing Dun prepared the order directing Bach to contact Michele and order her to "arrange for a mediation date on or before August 18, 1983." The order was signed and filed August 5, and was served on Bach by mail on August 11.

The August 18 hearing was held before Judge Ferroggiaro. When the court asked about the status of the mediation, Dun replied that Bach had been ordered orally and in writing to contact Michele to arrange for her participation in the mediation, but that the mediation team's attempts to contact her since that time had been unsuccessful.

Thereafter the following exchange occurred: "MR. BACH: Excuse me, your honor. I don't appreciate misstatements of fact. *No court order has ever been issued against me in open court or even served on me.* So I'm totally amazed at that statement. [¶] *Judge Buffington at no time ordered me to do anything.*

"THE COURT: Mr. Bach, let me read you the minute order.

"MR. BACH: I have not been served with any minute order.

"THE COURT: Order advised attorney to have client appear for mediation and the mediation team may talk to client directly.

"MR. BACH: *That was not stated to me, your Honor.*" (Italics added.)

Dun countered that not only had the court made the statements to Bach described in the minute order, but it also had signed a written order that same day. Bach claimed not to have received the written order, but asserted that in any event such an order would be "void" because he had not been notified an order would be sought. He concluded, "I'm most surprised that some order issued," and twice repeated his assertion that "there was no order to me on August 5 . . . that I should do anything."

The State Bar's hearing panel concluded Bach "willfully and intentionally committed the following acts: [¶] A. Sought to mislead a judge by a false statement of fact; [¶] B. Failed to employ such means only as were consistent with truth; [¶] C. Violated his oath and duties as an attorney; [¶] D. Committed acts of moral turpitude, and dishonesty[.]" The panel recommended Bach be suspended for one year, but that the suspension be stayed

on the condition he be placed on probation and pass the Professional Responsibility Examination.

The review department adopted the panel's findings but imposed greater discipline because "the record shows [Bach] deliberately misled a court and that he fails to understand the gravity of his misconduct."

■ Of course, it is Bach's burden to demonstrate wherein the State Bar's findings are unsupported by the evidence, or wherein its recommendations are erroneous or unlawful. (*Alberton* v. *State Bar* (1984) 37 Cal.3d 1, 12 [206 Cal.Rptr. 373, 686 P.2d 1177].)

■ Petitioner's first contention is that the State Bar proceedings denied him due process because the first amended notice to show cause alleged that a certain notice of motion was filed on May 3, 1983, when actually, he claims, the notice of motion was filed on May 27, 1983. However, petitioner concedes that he had actual notice of the hearing on the motion, whatever date the notice was actually filed, and more importantly, that the first amended order to show cause gave him notice of the conduct he was charged with, that is, the misrepresentation at the August 18, 1983, hearing. Under these circumstances we can see no possible deprivation of due process.

Petitioner also claims he was denied a fair hearing based on the following events: two days after the hearing panel issued its "Notice of Findings of Culpability" against Bach, Referee Hawley discovered a conflict (his law firm represented a party in pending litigation against another party represented by Bach). Hawley immediately wrote to the State Bar Court and to Bach, stating he would recuse himself unless both the State Bar and Bach consented in writing to his continued participation. Bach refused to consent, and Hawley recused himself. Thereafter the two remaining referees issued the hearing panel's decision.

Bach asserts Hawley's participation "infected" the two remaining referees, and hence he was denied due process when they issued the panel's decision. ■ We have previously held, however, "that participation by two members of a three-member panel constitutes a valid hearing for purposes of disciplinary action against a member of the bar." (*Baranowski* v. *State Bar* (1979) 24 Cal.3d 153, 165 [154 Cal.Rptr. 752, 593 P.2d 613]; *Petersen* v. *State Bar* (1943) 21 Cal.2d 866, 870-871 [136 P.2d 561]; see also Code Civ. Proc., § 1053 ["When there are three referees all must meet, but two of them may do any act which might be done by all."]; cf., Code Civ. Proc., § 170.3, subd. (b)(3).) We perceive no relevant distinction between

*Baranowski, Petersen,* and this case; hence we find no due process violation, nor any other error.

■ Bach next claims his due process and equal protection rights were violated because the disciplinary hearing was held in San Francisco instead of Oroville, where he resides, and because his witnesses were not paid fees, nor were they reimbursed for travel expenses. Rules of Procedure of the State Bar, rule 250, provides for disciplinary hearings to be held in San Francisco, Los Angeles, or San Diego. Bach petitioned unsuccessfully for a change of venue pursuant to rule 251, but he does not now claim that his motion was improperly denied. Instead, he asserts it was "coercive" and unfair to hold his hearing in San Francisco, and suggests his witnesses were prejudiced against him because they were forced to travel from Humboldt, and at their own expense. We cannot agree that these circumstances violated Bach's due process rights, and he cites no authorities supporting that view.

■ On the merits, Bach asserts that the findings of fact are not supported by clear and convincing evidence (see *Alberton, supra,* 37 Cal.3d at p. 12) that he made willful misrepresentations to a judge, or violated any of his duties as an attorney. We disagree.

As an initial matter, and contrary to Bach's assumption, the *validity* of the orders as to which he made misrepresentations is irrelevant. Whether or not Bach believed he had colorable arguments against the orders' enforceability, he was duty bound not to mislead or attempt to mislead the court about their existence.

■ An attorney has a duty "to employ, for the purpose of maintaining the causes confided to him such means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law." (Bus. & Prof. Code, § 6068, subd. (d); Rules Prof. Conduct, rule 7-105 (1).) Acting otherwise constitutes moral turpitude and warrants discipline. (E.g., *Davis* v. *State Bar* (1983) 33 Cal.3d 231, 240 [188 Cal.Rptr. 441, 655 P.2d 1276].)

■ In testimonial matters, great weight is given the findings of the hearing body that saw and heard the witnesses and the petitioner. (E.g., *Franklin* v. *State Bar* (1986) 41 Cal.3d 700, 708 [224 Cal.Rptr. 738, 715 P.2d 699].) Still, it is our task independently to examine and reweigh the evidence in passing on the State Bar's disciplinary recommendation. (*Ibid.*)

■ Though he represented to Judge Ferroggiaro that Judge Buffington had not even "advised" him to have his client appear for mediation, Bach

changed his story before the hearing panel and this court. He now acknowledges he was so directed by the court, but asserts the mere "advisement" was not an order; hence, he reasons, he did not mislead the court on August 18.

In his testimony before the hearing panel, Judge Buffington stated his use of the word "advise" was "unfortunate" because he intended his direction to be an order. He further testified, "[m]y suspicion is that I was probably pointing my finger at [Bach] and saying, 'You're well advised to get your client to mediation right now and you will do it personally.'" Any possible doubt about whether Bach was being ordered or merely "advised," however, was certainly dispelled by the court's statement to Dun, made in front of Bach and in response to Bach's request, that the court would sign a written order directing Bach to order Michele to attend the mediation meeting.

There is clear and convincing evidence to support the finding that Bach deliberately sought to mislead Judge Ferroggiaro. Not only did petitioner deny to Judge Ferroggiaro that Judge Buffington had even "advised" him to get his client to mediation, which was a patent falsehood, but he also denied that he had received the August 5 written order. The record establishes that the order was served on him by mail on August 11. Bach, on the other hand, testified that when he returned to his office after the August 18 hearing he "checked the mail and lo and behold, . . . I received copies of the August 5 order and the July 28 . . . order." In view of Bach's lack of forthrightness at the hearing, the State Bar, as well as this court, would be justified in discounting petitioner's testimony on this point. The record amply demonstrates that Bach sought to mislead Judge Ferroggiaro by a false statement of fact or artifice.

■ Finally, Bach asserts that the discipline recommended is excessive. As noted, the review department recommended one year of suspension stayed, sixty days' actual suspension, and three years' probation, whereas the hearing panel recommended merely one year of suspension, stayed, and one year of probation.

We have held that the review department's recommendation on discipline is entitled to greater weight than the recommendation of the hearing panel. (*Garlow* v. *State Bar* (1982) 30 Cal.3d 912, 916 [180 Cal.Rptr. 831, 640 P.2d 1106].) Again, however, the ultimate decision remains with this court. (*Ibid.*)

"It is well established that the purpose of State Bar proceedings is not punitive but protective of the public, thereby preserving its confidence in the

legal profession." (*Warner* v. *State Bar* (1983) 34 Cal.3d 36, 43 [192 Cal.Rptr. 244, 664 P.2d 148].) Bach's behavior in this matter is clearly the kind that threatens the public and undermines its confidence in the legal profession. Because the misconduct is serious, involves moral turpitude, and no evidence in mitigation appears, we conclude the recommended discipline is fully warranted.

Accordingly, petitioner is suspended from the practice of law for one year. Execution of suspension is stayed and petitioner is placed on probation for three years, with actual suspension for the first sixty days.

Petitioner is ordered to comply with the other conditions of probation set forth in the review department's order, to pay costs pursuant to Business and Professions Code section 6086.10, subdivisions (a) and (b), and to take and pass the Professional Responsibility Examination within one year of the effective date of this order. This order is effective 30 days after the filing of this opinion.