[No. S004939. Mar. 13, 1989.]

In re DANIEL P. LARKIN on Suspension.

---

## COUNSEL

John A. Mitchell for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., and Richard J. Zanassi for Respondent.

---

## OPINION

**THE COURT.**—This is a proceeding to review the State Bar Court's recommendation that petitioner Daniel P. Larkin be disciplined following his misdemeanor convictions of having violated Penal Code section 245, subdivision (a)(1), assault with a deadly weapon, and Penal Code section 182, conspiracy to commit assault with a deadly weapon. (Bus. & Prof. Code, §§ 6101, 6102; Cal. Rules of Court, rule 951(d).)[1]

The review department by a vote of eight to five adopted the hearing panel's findings of fact, "mitigation" and conclusions, and found that the facts and circumstances surrounding petitioner's convictions did not evince moral turpitude but did involve other misconduct warranting discipline. The review department also adopted the hearing panel's recommendation by a vote of nine to four that petitioner be suspended from the practice of law for three years, that execution of the suspension order be stayed, and that petitioner be placed on three years probation, on conditions which included one year of actual suspension.[2] Three of the four dissenters thought the recommended discipline to be insufficient.[3]

---

[1] All further statutory references are to the Business and Professions Code unless otherwise indicated.

[2] The review department further included as a condition of probation that petitioner (1) comply with California Rules of Court, rule 955; (2) take and pass the Professional Responsibility Examination within one year from the effective date of the order issued by this court; (3) obtain psychiatric or psychological counseling; (4) abstain from the use of intoxicants; and (5) participate in the State Bar Pilot Program on Alcohol Abuse.

[3] The three did not indicate what degree of discipline they thought would be appropriate. The fourth dissenting referee thought the degree of discipline recommended was excessive and that a three-month actual suspension would be adequate.

Petitioner urges us to delete the recommendation of the review department for an actual suspension, and to adopt the remainder of the review department's findings, conclusions and recommendations.

After considering the record and petitioner's arguments, we adopt the review department's recommendations, including one year of actual suspension.

## I. FACTS

Petitioner was admitted to practice law in California in June 1974 and has remained a member of the State Bar. He is a sole practitioner who primarily handles criminal and family law matters. He has no prior record of discipline.

Petitioner separated from his wife of 12 years in October 1981. They had two children, ages four and eight. She and the children continued to live in the house while petitioner moved to an apartment.

In January 1982, petitioner learned from his eight-year-old son that his separated wife was dating a man named David S., and that David S. had hit her[4] and that he excessively consumed alcohol.

Petitioner thereafter sought more information about David S. He acquired his telephone number from his separated wife's telephone bills sent to petitioner's residence for payment. Petitioner also utilized his connections in the El Cajon Police Department, the San Diego District Attorney's Office, and the San Diego marshal's office to identify and locate David S. and to discover if he had a criminal record. In addition, he reviewed public records in San Diego Municipal Court pertaining to David S.'s child support case. Petitioner further used a subpoena duces tecum to obtain the telephone records of both David S. and his employer under the false pretense that they were necessary for petitioner's pending dissolution. Petitioner was representing himself and was the attorney of record in the dissolution matter at the time the subpoena was issued. However, the subpoena indicated that Michael Berberich, an attorney in petitioner's office, was the attorney of record. Petitioner put Berberich's name on the subpoena, which Berberich signed, because petitioner allegedly was thinking of having Berberich represent him in the dissolution.

Through these methods, petitioner obtained personal information about David S. concerning his date of birth, social security number, motor vehicle

---

[4] Petitioner contends to this court that David S. hit his eight-year-old son as well. This is not supported by petitioner's own testimony or by any other evidence in the record.

ownership, criminal record, residence address and telephone number, work address and telephone number, and dissolution case. Using some of this information, he drove to David S.'s home to "check it out" on at least one occasion.

After obtaining and confirming the above information about David S., petitioner conspired with his client and codefendant Henry Strangfeld[5] to cause David S. to be assaulted. In furtherance of that conspiracy, petitioner provided Strangfeld with the personal information he had obtained about David S.

Sometime between February 11, 1982, and March 15, 1982, Strangfeld and an unidentified accomplice drove to David S.'s place of employment, instructed him to discontinue his relationship with petitioner's separated wife, and struck him on the chin with a metal flashlight causing him to bleed. As David S. attempted to control the bleeding, the two men told him never to come to Lakeside (town of residence of petitioner's separated wife) again or they would come back and see him again. David S.'s employer observed the assault and testified at petitioner's trial that the two men told David S. that if he ever came to Lakeside again, he would never walk again. David S.'s injury was apparently minor and he did not seek medical attention nor did he report the assault to the police.

At the time of the conspiracy and assault, Strangfeld owed petitioner over $1,000 for legal services. The criminal complaint and the testimony of witnesses at petitioner's trial indicate that Strangfeld conspired with petitioner and assaulted David S. in exchange for petitioner's discharging of his legal bill. Petitioner denied discharging Strangfeld's legal bill as a result of Strangfeld's assault on David S.[6] In fact petitioner denied even remembering speaking to Strangfeld about David S. at all.

Petitioner also met with Ron Gribble, a county marshal, who had brought electronic recording equipment to petitioner's office. Gribble had wiretapped his own wife's telephone and played a tape recording of her telephone conversations, and according to the testimony of petitioner's secretary, discussed how a portion of the equipment was to be used on petitioner's separated wife's telephone. Petitioner admitted that he and Gribble met, and listened to a tape recording, but denied discussing the wiretapping of his separated wife's phone.

[5] Petitioner had represented Strangfeld from approximately March 1981 through the middle of 1982 on criminal charges of possession of a controlled substance, hit-and-run driving, and drunk driving.

[6] The review department did not specifically find that petitioner had discharged Strangfeld's bill in exchange for Strangfeld's assault on David S. Strangfeld's bill remained unpaid at the time the hearing panel rendered its decision in early 1987.

On January 22, 1985, petitioner was charged in a two-count felony complaint with violation of Penal Code sections 182 and 245, subdivision (a)(1), conspiracy to commit assault with a deadly weapon and assault with a deadly weapon.[7] The charges were reduced by a municipal court judge to misdemeanors in accordance with Penal Code section 17, subdivision (b)(5). Following a jury trial, petitioner was convicted of the above misdemeanor violations. The court thereafter placed petitioner on formal probation for three years. The conditions of probation included 30 days in county jail, a $1,000 fine, and 480 hours of pro bono work. Petitioner did not appeal and the matter has long since become final.

On October 16, 1985, we referred this matter to the State Bar for a determination as to whether the facts and circumstances surrounding petitioner's conviction involved moral turpitude or other misconduct warranting discipline. On August 8, 1986, petitioner completed his term of probation and on August 22, 1986, petitioner's conviction was set aside pursuant to Penal Code section 1203.4. On October 21 and 22, 1986, and November 17, 1986, the hearing panel of the State Bar Court conducted an evidentiary hearing.

## II. STATE BAR PROCEEDINGS

The State Bar argued to the hearing panel and review department that petitioner's acts involved moral turpitude, and that he should be disbarred as dictated by the Rules of Procedure of the State Bar, division V, Standards for Attorney Sanctions for Professional Misconduct. Acknowledging that the crime of assault with a deadly weapon does not involve moral turpitude, the State Bar contended that petitioner's conduct *over an extended period of time* showed an "evil intent" constituting moral turpitude. It also stated that petitioner had not made an adequate showing of mitigation to merit a lighter degree of discipline.

Petitioner asserted that in fact the crime of assault with a deadly weapon does not involve moral turpitude, and that a conspiracy to commit the same crime did not add an element of moral turpitude. He also argued that

[7]The criminal complaint alleged that between February 11, 1982, and March 15, 1982, and in furtherance of the two counts charged, (1) petitioner met with codefendant, Strangfeld, and planned to assault David S. to cause him to discontinue his relationship with petitioner's estranged wife; (2) petitioner provided Strangfeld with information obtained during petitioner's personal investigation of David S.; (3) Strangfeld traveled with another individual to David S.'s place of employment to assault him; (4) Strangfeld and the other individual did assault David S. and told him to discontinue his relationship with petitioner's estranged wife; (5) Strangfeld told another individual to inform petitioner that David S. had been assaulted; and (6) petitioner and Strangfeld agreed that, in return for Strangfeld having assaulted David S., petitioner would discharge a debt owed by Strangfeld to petitioner.

several factors mitigated his conduct, and suggested that the appropriate degree of discipline should be probation with no actual suspension.

During petitioner's testimony to the hearing panel, he maintained that he did not remember telling Strangfeld to contact or assault David S. and to warn him that he risked a more serious assault if he visited petitioner's separated wife again. However, petitioner conceded he must have discussed this matter with Strangfeld. Dr. Phillip Solomon, a psychiatrist who evaluated petitioner, testified that this lack of recollection could be accounted for by turmoil and self-abusive conduct. He also stated that he considered petitioner a normal member of society, and that petitioner's conduct evidenced self-defeating and aggressive behavior which was not normal. The psychiatrist further stated that hiring someone to beat up an estranged wife's boyfriend indicated "childish, unwise and immature" behavior. Dr. Solomon further testified that petitioner's conduct was a once-in-a-lifetime type of conduct. He thought that petitioner had learned much from "this experience" and believed it unlikely that petitioner would commit similar acts in the future.

To demonstrate mitigation, petitioner testified that he was going through a difficult separation. He said that he was informed by his son that his separated wife was dating a man who drank heavily and had abused her. Petitioner himself began drinking heavily because of the emotional stress of the domestic situation. Petitioner stated that in 1981 he was drinking two to three glasses of wine every night, and by late 1981 or early 1982, he began drinking in his office after meeting his last client. Petitioner also testified that by late 1981, after realizing his marriage was over, he began drinking one-fifth gallon to one quart of bourbon a day. His alcohol consumption had reached a peak at the time petitioner engaged in criminal activities during late 1981 and early 1982. As a result of his excessive drinking, petitioner claimed that his weight increased from 160 to over 200 pounds and that his blood pressure had risen significantly.

Petitioner consulted a doctor in November 1981 regarding an anxiety problem, and saw a doctor in February 1982 about his weight problem. In March 1982, petitioner resolved to lose weight.[8] He "dramatically" cut down his drinking, limiting himself to one glass of wine daily. He also took the prescription drug Ritalin, an amphetamine, which he received from another person, in order to control his weight. He took the drug in 30 milligram daily doses for 45 to 60 days. (Dr. Solomon testified that Ritalin is a stimulant to the nervous system and that taking 30 milligrams a day, combined with stress, could disturb an individual's mental faculties.)

---

[8] Since David S. testified that he was assaulted in February or March 1982, petitioner's new resolve apparently arose immediately after or during his engagement in criminal activities.

Petitioner is now 41 years of age. He continues to defy great physical handicaps from birth defects. As a child, petitioner had 13 major operations to correct these birth defects. His right leg is nine inches shorter than his left, and petitioner must wear a prosthetic device on his right leg.

Petitioner has been involved in bar activities and civic affairs. He sat as a judge in moot court competitions, helped to create a local bar association, and assisted the Lions Club, Boys Club, Little League, and Girl Scouts. He also has served as a pro tem judge of the municipal court and superior court on several occasions.

Petitioner is held in the highest regard by judges, attorneys, and members of the public with respect to his honesty, integrity, capabilities and devotion to the law. Sixteen witnesses testified on his behalf, including two superior court judges, four municipal court judges, two attorneys who have since been appointed superior court judges, and other attorneys as well as law enforcement officers. An additional 20 persons submitted affidavits concerning petitioner's good character, including Justice Don R. Work on the Court of Appeal, and a municipal court judge. The hearing panel and the review department accepted most of petitioner's testimony and evidence regarding mitigation of his conduct.[9]

After considering all of the evidence, the hearing panel concluded that the facts and circumstances surrounding petitioner's violations of Penal Code sections 182 and 245, subdivision (a) did not involve moral turpitude, but that such facts and circumstances surrounding said violations did involve other misconduct warranting discipline.

---

[9] The hearing panel considered a number of factors in mitigation: (1) petitioner's child had informed him that David S. was dating his wife, drank heavily and hit his wife, and this disturbed his children; (2) petitioner began consuming large amounts of alcohol and began taking Ritalin in response to his pending divorce; (3) petitioner was under strong emotional distress and was abusing alcohol and drugs during the time of the assault and conspiracy to commit the assault; (4) petitioner has no prior record of discipline; (5) petitioner had never been arrested or charged with a criminal offense before the charges which led to the initiation of this State Bar proceeding; (6) when practicing appointed-criminal-defense law, petitioner was rated by the El Cajon court as qualified to be appointed to represent defendants charged with the most serious crimes; (7) petitioner has been involved in bar activities and civic affairs; (8) petitioner has performed extensive pro bono work; (9) petitioner served as a pro tem judge on the municipal court and the superior court; (10) petitioner suffers from and has overcome great physical handicaps existing from early childhood; (11) petitioner is held in the highest regard by judges, attorneys, and members of the public with regard to honesty, integrity, capability, and devotion to the law; (12) petitioner's conduct in conspiring to commit assault with a deadly weapon was an aberration in his normal nonviolent, law-abiding character; (13) petitioner conducted himself in a law-abiding and nonviolent manner during the three years between his commission of the crime and the time he was charged with the crime; and, (14) petitioner has demonstrated that it is highly unlikely that he would commit such acts in the future.

## III. Discussion

■ While we give great weight both to the department's disciplinary recommendation (*In re Severo* (1986) 41 Cal.3d 493, 500 [224 Cal.Rptr. 106, 714 P.2d 1244]) and the hearing panel's factual findings (*In re Kreamer* (1975) 14 Cal.3d 524, 532, fn. 5 [121 Cal.Rptr. 600, 535 P.2d 728]), we exercise our independent judgment in determining the appropriate discipline to be imposed (*Greenbaum* v. *State Bar* (1987) 43 Cal.3d 543, 550 [237 Cal.Rptr. 168, 736 P.2d 754]; *In re Chira* (1986) 42 Cal.3d 904, 909 [231 Cal.Rptr. 560, 727 P.2d 753]). ■ Petitioner, however, bears the burden of showing the review department's recommendation is erroneous or unlawful (§ 6083, subd. (c); *Trousil* v. *State Bar* (1985) 38 Cal.3d 337, 341 [211 Cal.Rptr. 525, 695 P.2d 1066]), or that its findings are not supported by the record (*Smith* v. *State Bar* (1985) 38 Cal.3d 525, 538-539 [213 Cal.Rptr. 236, 698 P.2d 139]).

In section 6101 proceedings, a criminal conviction is conclusive proof that the attorney committed all acts necessary to constitute the offense. (§ 6101, subds. (a) & (e); *In re Ford* (1988) 44 Cal.3d 810, 815 [244 Cal.Rptr. 476, 749 P.2d 1331].) The State Bar does not challenge the hearing panel and review department's finding that petitioner's conduct in committing the crime for which he was convicted did not involve moral turpitude, and we decline in this case to consider the question of moral turpitude.

■ As the hearing panel and review department concluded, however, the facts and circumstances surrounding petitioner's conviction involved conduct warranting discipline. ■ There is no fixed formula guiding our determination of the appropriate sanction. (*Alberton* v. *State Bar* (1984) 37 Cal.3d 1, 14 [206 Cal.Rptr. 373, 686 P.2d 1177].) We examine the totality of circumstances presented by the particular case, including mitigating circumstances (*Tarver* v. *State Bar* (1984) 37 Cal.3d 122, 133 [207 Cal.Rptr. 302, 688 P.2d 911]), as well as the nature of the offense itself. There have been relatively few reported decisions, in which an attorney caused physical harm to another, to which we could look for direction.[10]

One such case is *In re Rothrock, supra,* 16 Cal.2d 449. There, we dismissed disciplinary proceedings against an attorney who had pled guilty to

---

[10] See *In re Strick* (1987) 43 Cal.3d 644 [238 Cal.Rptr. 397, 738 P.2d 743] (same proceeding as *In re Strick* (1983) *infra*); *In re Strick* (1983) 34 Cal.3d 891 [196 Cal.Rptr. 509, 671 P.2d 1251] (disbarment for one count of voluntary manslaughter and one count of assault with a deadly weapon); *In re Nevill* (1985) 39 Cal.3d 729 [217 Cal.Rptr. 841, 704 P.2d 1332] (disbarment for voluntary manslaughter); *In re Alkow* (1966) 64 Cal.2d 838 [51 Cal.Rptr. 912, 415 P.2d 800, 21 A.L.R.3d 882] (six-month suspension for vehicular manslaughter); *In re Rothrock* (1940) 16 Cal.2d 449 [106 P.2d 907, 131 A.L.R. 226] (proceeding dismissed—assault with a deadly weapon).

assault with a deadly weapon. The State Bar had recommended disbarment. We reasoned that "such lesser offenses by an attorney in the heat of anger" did not involve moral turpitude and should not be the subject of State Bar disciplinary hearings. (*Id*. at p. 459.)

██ The State Bar argues that we should distinguish *Rothrock, supra,* 16 Cal.2d 449. Here, petitioner was convicted of not only assault with a deadly weapon, but also conspiracy to commit the same. The State Bar states that petitioner's conduct was not a spontaneous reaction in the "heat of anger" but a premeditated plan. It points out that when *Rothrock* was decided in 1940, we applied a different law which stated that a criminal conviction must involve moral turpitude before discipline could be imposed. Currently, the law provides that the conviction of a crime may subject an attorney to discipline, even though the attorney's conduct did not involve moral turpitude.

Petitioner responds that the State Bar's position is premised on the theory that he acted according to a premeditated plan. He alleges that there is no direct support in the record for such a premeditation theory.

Petitioner's argument is groundless. ██ Premeditation is "A prior determination to do an act, but such determination need not exist for any particular period before it is carried into effect. Term 'premeditation,' means 'thought of beforehand for any length of time, however short.'" (Black's Law Dict. (5th ed. 1983) p. 1062, col. 2.) ██ Petitioner's conviction of conspiracy is conclusive proof that he committed all acts necessary to constitute the offense. (§ 6101, subds. (a) & (e); *In re Ford* (1988) 44 Cal.3d 810, 815 [244 Cal.Rptr. 476, 749 P.2d 1331].) Hence, by definition, the conspiracy here involves premeditation since petitioner and Strangfeld agreed to the crime at some point before committing the crime itself.

The State Bar's argument, on the other hand, is persuasive. The *Rothrock* case (*supra,* 16 Cal.2d 449) is distinguishable because here, petitioner assaulted the victim not in the "heat of anger," but in the course of a premeditated and conspiratorial plan. It was no spontaneous reaction out of anger or passion.

Moreover, while *Rothrock* might have some pertinence to an investigation of moral turpitude, the case hardly aids us in determining the appropriate discipline. As the State Bar pointed out, in 1940 we could not reach the question of degree of discipline since we decided that the attorney had not demonstated lack of moral turpitude. Of course the state of the law today provides otherwise.

■ In petitioner's case, we have considered not only all of the facts and circumstances surrounding petitioner's conviction, but also the mitigating factors. While the mitigating circumstances are compelling, we must also take into account the seriousness of petitioner's crime. As we stated in *In re Nevill, supra,* 39 Cal.3d 729, 735: "Where an attorney's criminal act involves actual physical harm to a particular individual, the necessary showing of mitigating circumstances increases accordingly." (Citation omitted.) (See also *In re Strick, supra,* 43 Cal.3d 644, 656.)

The hearing panel and review department took the mitigating factors into consideration in making its disciplinary recommendations of a three-year suspension, stayed with one year of actual suspension. We find that petitioner has not met his burden of showing that the review department's recommendation is erroneous or unlawful. (§ 6083, subd. (c); *Trousil v. State Bar, supra,* 38 Cal.3d 337, 341.)

## IV. DISPOSITION

Having independently reviewed the record (*Bach v. State Bar* (1987) 43 Cal.3d 848, 855 [239 Cal.Rptr. 302, 740 P.2d 414]), we are satisfied that the recommended discipline, together with the recommended probationary terms (*ante,* p. 238 and fn. 2), is proper in this case. Accordingly, it is ordered that Daniel P. Larkin be suspended from the practice of law for three years, that execution of the suspension order be stayed and that he be placed on probation for three years on condition that he be actually suspended for one year and comply with the other conditions of probation adopted by the review department. It is further ordered that he take and pass the Professional Responsibility Examination within one year after the effective date of this order. (See *Segretti v. State Bar* (1976) 15 Cal.3d 878, 891, fn. 8 [126 Cal.Rptr. 793, 544 P.2d 929].) He is also ordered to comply with rule 955, California Rules of Court, and to perform the acts specified in subdivision (a) and (c) of that rule within 30 and 40 days, respectively, after the date this order is effective. This order is effective on the finality of this opinion.