[L.A. No. 31419. Nov. 10, 1983.]

In re BERNARD SABBATH STRICK on Disbarment.

COUNSEL

Toledano & Charnley and James Toledano for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., Marie M. Moffat and Michael Gerner for Respondent.

OPINION

**THE COURT.**—In this proceeding we review the report of the State Bar Court that petitioner has been convicted of criminal offenses involving moral turpitude and the recommendation that he be disbarred because of the severity of the misconduct surrounding the conviction of passing a forged prescription for a controlled substance. The State Bar has not made a recommendation of the appropriate discipline for petitioner's convictions of the more serious crimes of voluntary manslaughter and assault with a deadly

weapon because those convictions did not become final on appeal until after State Bar proceedings were concluded.

Petitioner's principal objections to the report and recommendation are that (1) the State Bar was without jurisdiction to conduct any conviction proceedings whatsoever with reference to the convictions which were pending on appeal; (2) this court's order referring the forgery conviction requested only an inquiry into moral turpitude and did not authorize the Bar to recommend discipline in that matter; and (3) the findings of moral turpitude are not supported by the evidence considered by the hearing panel.

For reasons explained below we find that there is probable cause to believe the offenses of manslaughter and assault involved moral turpitude and place petitioner on interim suspension in Bar Misc. No. 4304. As these convictions are now final for disciplinary purposes, we refer the matter to the State Bar for a report and recommendation as to what discipline should be imposed in Bar Misc. No. 4304.

The record before us contains no evidence of the circumstances surrounding petitioner's conviction of passing a forged prescription. The finding that the offense involved misconduct warranting discipline and the recommendation that petitioner be disbarred cannot be adopted by this court absent sufficient evidence. Bar Misc. No. 4306 is therefore remanded to the State Bar for a report and recommendation as to (1) whether the offense involved moral turpitude or other misconduct warranting discipline and (2) what discipline is appropriate to any misconduct which is found.

I

Petitioner Strick graduated from Boalt Hall and was admitted to the bar in 1972. He established a successful practice in Southern California involving both civil litigation and criminal defense. In 1976 he began to use opiates and other drugs frequently, including particularly Dilaudid, a powerful morphine derivative. He became addicted and neglected his law practice. In July 1978 the State Bar initiated a proceeding to have petitioner placed on inactive status because his drug use and addiction had interfered with his practice. (Bus. & Prof. Code, § 6007, subd. (b).) Petitioner stipulated to placement on inactive status, and has remained on that status since January 11, 1979.

In October 1978 petitioner was charged with passing forged prescriptions (Bus. & Prof. Code, § 4390) on three occasions: in March and December of 1977 and in March of 1978. In May 1980 he entered a plea of nolo contendere to a misdemeanor count based on the March 1977 incident, as

well as to a separate count of forging or uttering a forged prescription for narcotics (Health & Saf. Code, § 11368) based on an August 1979 incident.

In December 1978 a young man was killed in a shooting incident in petitioner's apartment. Petitioner was charged with murder. In February 1980 a jury convicted him of voluntary manslaughter and assault with a deadly weapon. The conviction was affirmed on appeal and hearing was denied by this court on June 9, 1982.

In accord with customary practice the State Bar notified us of the convictions pursuant to Business and Professions Code section 6101.[1] None of the offenses involve moral turpitude per se. Therefore, by separate orders dated August 28, 1980, we referred all three matters, Bar Misc. Nos. 4304 (the manslaughter and assault convictions), 4306 (the § 4390 conviction), and 4307 (the Health & Saf. Code, § 11368 conviction), to the State Bar for a report and recommendation as to whether the facts and circumstances surrounding the offenses involved moral turpitude or other misconduct warranting discipline. (See, § 6102, subds. (a) and (c); *In re Rothrock* (1940) 16 Cal.2d 449, 455 [106 P.2d 907, 131 A.L.R. 226].) The two forgery convictions became final without notice of appeal being filed. On October 22, 1980, we issued orders augmenting the referrals of those matters (Bar Misc. Nos. 4306 and 4307) to include recommendations as to the appropriate discipline should the offenses be found to warrant disciplinary action. (See, § 6102, subd. (b).) The record indicates that these augmenting orders never came to the attention of the State Bar Hearing Panel. After petitioner's plea to the Health and Safety Code violation was set aside upon a successful petition for writ of habeas corpus we vacated our prior orders pertaining to that conviction (Bar Misc. No. 4307). Petitioner's manslaughter and assault convictions (Bar Misc. No. 4304) became final for disciplinary purposes on August 9, 1982 (see Cal. Rules of Court, rule 951(b)), one month after the review department voted to recommend petitioner's disbarment in Bar Misc. No. 4306.

*Bar Misc. No. 4304—The Manslaughter and Assault Convictions.*

From the inception of these proceedings petitioner has asserted that the State Bar is without jurisdiction to conduct any conviction proceedings, including proceedings directed to determining whether he should be placed on interim suspension, in Bar Misc. No. 4304. He asserts that section 6102, subdivision (a) vests this court with exclusive authority to order interim suspension and that we may do so only where the record of conviction on its face shows that the offense involved or probably involved moral turpi-

---

[1]All statutory references are to the Business and Professions Code unless otherwise noted.

tude. He further asserts that proceedings to determine whether the circumstances surrounding the offense involved moral turpitude and if so what discipline should be imposed may not be commenced until the judgment of conviction has become final. (§ 6102, subd. (b).)[2]

■  The statute clearly does not authorize imposition of final discipline until the judgment of conviction has become final on appeal or the time for seeking an appeal has passed. (§ 6102, subd. (b); Cal. Rules of Court, rule 951(b).) The attorney must be given notice and an opportunity to be heard prior to the making of a final disciplinary order. (§ 6102, subd. (b); *In re Ruffalo* (1968) 390 U.S. 544 [20 L.Ed.2d 117, 88 S.Ct. 1222]; *Emslie v. State Bar* (1974) 11 Cal.3d 210, 229 [113 Cal.Rptr. 175, 520 P.2d 991].)

Interim suspension, however, is the method by which the court may temporarily suspend an attorney whose acts indicate he or she may be unfit to practice law, pending the final resolution of criminal charges. Subdivision (a) of section 6102 is framed in mandatory terms: "Upon the receipt of the certified copy of the record of conviction, if it appears therefrom that the crime . . . involved or that there is probable cause to believe that it involved moral turpitude, the Supreme Court shall suspend the attorney until the time for appeal has elapsed, . . ."

It is this court's practice to refer to the State Bar cases in which an attorney has been convicted of a crime where the determination of whether moral turpitude is involved requires an examination of the facts and circumstances of the case. This practice is implicitly recognized in rule 951(a), which precludes a petition to set aside temporary suspension if a referral to the State Bar preceded the suspension order. Subdivision (c) of section 6102 expressly authorizes this court to "refer the proceedings or any part thereof or issue therein, including the nature or extent of discipline, to the State Bar for hearing, report and recommendation." Thus we find that our referral order properly conferred upon the State Bar the power to report whether petitioner's offenses involved moral turpitude or other misconduct warranting discipline, in order to assist this court in deciding whether interim suspension is warranted. This court retains the sole power to order petitioner suspended from the practice of law.

We believe, however, that the State Bar may have misinterpreted the scope of the power of investigation conferred by our referral on the issue of interim suspension. The State Bar sought to hold a hearing and take evidence pertaining to the facts and circumstances surrounding petitioner's

---

[2]We denied a petition for writ of review seeking to prevent a scheduled deposition of petitioner in Bar Misc. No. 4304 on the same grounds on June 24, 1981.

convictions. The hearing examiner explained that the record established during these hearings would comprise the record ultimately placed before the Supreme Court on the issue of the appropriate discipline to be imposed. This was asserted to avoid the need for a retrial of the facts and circumstances surrounding the convictions after they became final.

■ Petitioner, however, is entitled to procedural due process in proceedings which contemplate the deprivation of his license to practice his profession. (*In re Ruffalo, supra,* 390 U.S. 544; *Emslie* v. *State Bar, supra,* 11 Cal.3d 210, 229.) Both the statutes and the State Bar Rules of Procedure guarantee notice and an opportunity to be heard, to present a defense, to engage in discovery, and to present evidence prior to imposition of discipline. (§ 6102, subd. (b); Rules Proc. of State Bar, rule 551 et seq., & rules 601-603; see, *Schullman* v. *State Bar* (1973) 10 Cal.3d 526, 537 [111 Cal.Rptr. 161, 516 P.2d 865].) ■ This court has held that an attorney facing disciplinary charges may be called to testify but may decline to answer questions where the testimony would tend to incriminate. (*Black* v. *State Bar* (1972) 7 Cal.3d 676, 688 [103 Cal.Rptr. 288, 499 P.2d 968].)

■ Petitioner here chose to maintain his silence with regard to the criminal charges which had not been finally determined. It has recently been held that a witness retains the privilege against self-incrimination during the pendency of an appeal. (*People* v. *Lopez* (1980) 110 Cal.App.3d 1010, 1021 [168 Cal.Rptr. 378]; *In re Courtney S.* (1982) 130 Cal.App.3d 567, 573 [181 Cal.Rptr. 843].) Petitioner cannot be criticized for asserting this right. Nor may he be penalized by having the issue of discipline submitted on a record that was developed without his participation.

■ A careful reading of section 6102 reveals, however, that attorneys who have been convicted of criminal charges need not be placed in such a position. Interim suspension is mandated in cases where from the record of conviction it appears that the crime "involved or that there is probable cause to believe that it involved" moral turpitude. We refer to the State Bar those cases where moral turpitude is not inherent in the offense itself. We do not require, however, that the State Bar make a full and final determination of the nature and circumstances of the crimes. Instead, we seek advice as to whether there is probable cause to believe that the particular offense involved moral turpitude requiring interim suspension of the attorney.

■ A probable cause recommendation may be made upon an examination of the record of conviction. The record of the proceedings resulting in conviction, including a transcript of the testimony taken, may be examined. (See § 6102, subd. (d).) This record may be deemed conclusive evidence of guilt for purposes of interim suspension (see § 6101; *In re Kirschke*

(1976) 16 Cal.3d 902, 904 [129 Cal.Rptr. 780, 549 P.2d 548]); if the conviction is reversed on appeal of course the record will no longer support interim suspension or any conviction proceeding. While the attorney should be afforded an opportunity to present evidence and argument that his or her conduct did not amount to moral turpitude, he or she should not be forced to do so. Once the conviction has become final a full hearing is authorized and required by statute. At this point the attorney must be permitted to present evidence, testimony and argument on both the issue of moral turpitude and the question of appropriate discipline.

Petitioner contends that the State Bar Court's finding that the manslaughter and assault convictions involved moral turpitude and other misconduct warranting discipline was not supported by the evidence. ■ One who seeks review of a recommendation of disbarment bears the burden of showing the recommendation is erroneous or unlawful. (*In re Petty* (1981) 29 Cal.3d 356 [173 Cal.Rptr. 461, 627 P.2d 191]; *Emslie* v. *State Bar, supra,* 11 Cal.3d 210, 219.) ■ Although we afford great weight to the findings of fact made by the hearing panel, it is this court's duty to independently examine the record, reweigh the evidence and pass on its sufficiency. (*Emslie* v. *State Bar, supra,* 11 Cal.3d at p. 220.) In this determination, all reasonable doubts will be resolved in favor of the accused. (*Ibid.*) Nevertheless, petitioner must demonstrate the charges are not sustained by convincing proof and to a reasonable certainty. (*Ibid.*)

The State Bar's finding of moral turpitude is based on its factual findings that petitioner had been involved with illegal drug use for two years prior to the homicide and assault, that he had furnished drugs to others, including minor females, that he had surrounded himself with guns, and that he was the aggressor in the incident which resulted in the death of an eighteen-year-old man who had posed no personal threat to petitioner.

Petitioner contends these findings are meaningless because he did not testify before the hearing panel. Petitioner's testimony at his criminal trial, however, was part of the record of conviction considered by the hearing panel. ■ The evidence supporting the guilty verdicts adequately supports a preliminary finding of probable cause to believe that petitioner's offenses involved moral turpitude and warrant interim suspension.

Petitioner testified that at the time of the homicide he was attempting to overcome his addiction to Dilaudid. He had asked the 18-year-old woman who shared his apartment, and with whom he took drugs, to move out and to return to him the keys to his apartment and cars. Petitioner, the young woman and the victim spent the day of the homicide taking cocaine together at petitioner's apartment. At the end of the day the woman and the

victim went to a party. She told petitioner she had another place to stay and would not be back. The two returned, however, and slept on a mattress in the living room. Petitioner awakened around 5 a.m. and was angry to find the disinvited guests in his house. He asked the woman to leave several times but she resisted the suggestion. The victim awoke and suggested that they leave but made no motion toward doing so. After several demands, petitioner retrieved a loaded handgun from his bedroom, to impress the others that he was serious about wanting them to leave. He brought the gun into the living room. The safety was off. Although he did not point it at anyone, a struggle ensued. The gun discharged several times, finally striking the victim. Petitioner directed the woman to telephone for an ambulance and the police. He did nothing else to assist the victim or to comfort him. After a few minutes he noticed that the apartment door was partially closed, and that it was prevented from closing completely by the victim's feet which lay across the threshold. Petitioner left the naked body in a common hallway of the apartment building but brought the gun inside and hid it under a chair. The police arrived and asked the woman and petitioner what had happened. She stated that petitioner had shot the victim.

Police officers testified that when they entered petitioner spontaneously told them that the homicide victim had tried to break in and that petitioner did not know where the gun was as the woman—the victim of the assault—had been waving it around.

The woman's testimony differed significantly from petitioner's. She claimed to have been in another room when petitioner confronted the victim. She testified that she saw petitioner order the victim to leave, try to push him out the door and then shoot him. After the shooting she struggled with petitioner for the gun.

▆▆ Whether the facts as found constitute moral turpitude is a question of law to be determined by this court. (*In re Higbie* (1972) 6 Cal.3d 562, 569 [99 Cal.Rptr. 865, 493 P.2d 97].) ▆▆ The concept is not one, however, which has or can be described with precision. Moral turpitude has been described as "an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." (*In re Craig* (1938) 12 Cal.2d 93, 97 [82 P.2d 442].) It has been described as any crime or misconduct committed without excuse (*In re Hallinan* (1954) 43 Cal.2d 243, 251 [272 P.2d 768]) or as any dishonest or immoral act. (See, *In re Higbie, supra.*) Conduct which indicates that an attorney is unable to meet the professional and fiduciary duties of his practice may show him or her to be unfit to practice and constitute moral turpitude. (*In re Higbie, supra,* 6 Cal.3d 562, at p. 572.)

■ The purpose of interim suspension—like that of disbarment—is to protect the public, the courts and the profession against unsuitable legal practitioners (see, *In re Conflenti* (1981) 29 Cal.3d 120 [172 Cal.Rptr. 203, 624 P.2d 253]), and present fitness to practice is the controlling consideration (*In re Petty, supra,* 29 Cal.3d 356). We have said that we must recognize this purpose when evaluating conduct that may or may not involve moral turpitude, because holding that an attorney's act constitutes moral turpitude characterizes the attorney as unsuitable to practice law. (*In re Higbie, supra,* 6 Cal.3d at p. 570.)

■ Both perjury (*In re Kristovich* (1976) 18 Cal.3d 468, 472 [134 Cal.Rptr. 409, 556 P.2d 771]) and fraud (*In re Hallinan, supra,* 43 Cal.2d 247) involve moral turpitude, as do those offenses related to fraud which involve intentional dishonesty for personal gain (*In re Hallinan, supra*). First degree murder constitutes moral turpitude per se (*In re Kirschke, supra,* 16 Cal.3d 902), but assault with a deadly weapon does not (*In re Rothrock, supra,* 16 Cal.2d 449, 459).

We have said that the commission of a lesser offense such as simple assault, in the heat of anger or as the result of physical or mental infirmity, does not necessarily reflect on an attorney's integrity, honesty or fidelity and does not involve moral turpitude. (*In re Rothrock, supra,* 16 Cal.2d 449; see also, *In re Hatch* (1937) 10 Cal.2d 147, 150 [73 P.2d 885].) On the other hand, an attorney who drove for years without a valid license and knowing he had defective vision committed an act of moral turpitude when his car struck and killed a pedestrian. (*In re Alkow* (1966) 64 Cal.2d 838 [51 Cal.Rptr. 912, 415 P.2d 800, 21 A.L.R.3d 882].) His conduct showed a complete disregard for the conditions of a previously imposed probation, for the law, and for the safety of the public. (*Id.,* at p. 841.)

■ Petitioner committed two serious offenses, one of which resulted in the needless loss of a young man's life. Considering the trial testimony and resolving all doubts in petitioner's favor (see *In re Higbie, supra,* 6 Cal.3d at p. 569) the evidence shows moral turpitude. Petitioner knowingly engaged in a prolonged course of illegal, drug-related conduct. The killing and assault resulted from his show of deadly force in an attempt to intimidate two persons younger than himself who presented no threat to him into acceding to his demand that they immediately rise from their drugged sleep and leave his house. After the shooting occurred, petitioner callously left the victim's naked body in a common hallway. He initially denied knowledge of the location of the weapon and sought to implicate the victim of the assault in the killing, but later admitted hiding the gun and initiating the confrontation. This course of conduct was certainly contrary to the accepted and customary rule of right and duty between persons (*In re Craig, supra,*

12 Cal.2d 93), showing disregard for the law and the safety of the public (*In re Alkow, supra,* 64 Cal.2d 838) and reflecting poorly on petitioner's honesty and integrity (*In re Rothrock, supra,* 16 Cal.2d 450).

*Bar Misc. No. 4306—Section 4390*

Petitioner entered a plea of nolo contendere to a charge based on conduct which occurred in March 1977. The sentencing court treated the conviction as a misdemeanor, sentencing petitioner to 180 days in county jail. The State Bar found petitioner's "continual, and long established pattern of drug abuse and his general anti-social behavior evidenced in part by his drug abuse demonstrates, not only a total disregard for his duties and oath as an attorney, but also conduct that is beyond the basic social duties required of a civilized human being." The hearing panel found petitioner guilty of moral turpitude and other misconduct warranting discipline and recommended suspension from practice for a period of five years or until petitioner furnished evidence he had conquered his drug abuse problems. By a vote of seven to four, the review department instead recommended that petitioner be disbarred. The department advised that "under the totality of the facts and circumstances surrounding [petitioner's] conviction of violation of Business and Professions Code section 4390, disbarment is the only appropriate recommendation adequate to protect the public."

■ Petitioner correctly contends there is insufficient evidence pertaining to the violation of section 4390 to support the finding of moral turpitude and that the State Bar improperly considered the circumstances surrounding the commission of manslaughter—which occurred 21 months later—as a basis for deeming the forgery conviction to involve moral turpitude.

Perhaps as a result of the confusion surrounding the proceedings in Bar Misc. No. 4307[3] the hearing panel neglected to take any evidence of the

---

[3]When petitioner's conviction of violating Health and Safety Code section 11368 was set aside the hearing panel announced its intention to proceed pursuant to its authority to initiate disciplinary proceedings against an attorney who has committed an act involving moral turpitude, dishonesty or corruption, whether or not a criminal conviction has resulted. (See § 6106; State Bar Rules Proc., rule 501 et seq.; *Best* v. *State Bar* (1962) 57 Cal.2d 633 [21 Cal.Rptr. 589, 371 P.2d 325].) The panel then heard testimony from the doctor on whose form the prescription had been written, and from a person who had been in the business of supplying falsified prescriptions to persons who would obtain narcotics and give him a share of the drugs. Although the witness had sold petitioner drugs on occasion, he could not remember whether or not he had given any particular form to petitioner.

The hearing panel dropped further proceedings in Bar Misc. No. 4307 when this court vacated its order of referral. The panel specifically declined to consider the circumstances established by testimony as pertinent to the circumstances surrounding the manslaughter conviction, because the events were remote in time and not directly associated with the manslaughter, which had occurred nine months earlier.

nature of the section 4390 violation, other than to accept copies of the judgment and a transcript of the hearing on entry of plea and sentencing. The judgment recites only the elements of the offense. Our order referring the matter to the State Bar demonstrates that the fact of conviction alone does not evidence moral turpitude.

The transcript at sentencing recites no facts of the 1977 offense. The court's extensive explication of petitioner's dangerousness pertained only to the decision to deny bail pending appeal and described the circumstances surrounding the conviction of manslaughter and of the 1979 forgery. Petitioner's testimony at the manslaughter trial shows only that he began heavy drug use in early 1977. While we may infer that petitioner's conduct in 1978 and 1979 was the culmination of a process begun in 1977, the record is devoid of convincing proof that the March 1977 conduct underlying Bar Misc. No. 4306 involved moral turpitude. If the circumstances surrounding the 1979 forgery conviction were too remote in time and too indirectly related to be considered in relation to the manslaughter offense, as the hearing panel found, then a fortiori, the circumstances surrounding the manslaughter were too remote from the events surrounding a forgery which occurred 21 months earlier.

Petitioner further contends that the State Bar was not authorized to recommend discipline in this matter. As noted above, although this court issued an order on October 22, 1980, augmenting our referral to include a recommendation as to discipline should the offense be found to involve moral turpitude, the State Bar report asserts that no such order was received.[4]

The State Bar's rules of procedure limit the issues before the hearing panel to those stated in the order of reference from this court. (Rule 602.) Petitioner apparently relied on the hearing panel's assurance that it would make recommendations as to interim suspension only; he presented no evidence or argument in mitigation of any discipline that might be imposed. His only argument to the hearing panel was that the manslaughter did not involve moral turpitude and that placing him on interim suspension was not necessary for protection of the public, because he is an inactive member of the bar.

Petitioner also contends that disbarment is not warranted by the facts pertaining to the section 4390 violation and is not necessary to protect the public and the profession, because he is already enrolled as an inactive mem-

---

[4]California Rules of Court, rule 951 places responsibility on both the State Bar and our clerk to mail copies of referral orders to the attorney who is the subject of a conviction proceeding. (Rule 951(c) & (e).) From the record it is unclear whether any party received copies of the October 22 order. Copies do appear in this court's files.

ber of the bar. Relying on *Hyland* v. *State Bar* (1963) 59 Cal.2d 765 [31 Cal.Rptr. 329, 382 P.2d 369], petitioner asserts that the appropriate remedy for the incompetence caused by his drug use is not disbarment or suspension but enrollment as an inactive member.

*Hyland* suggested enrollment on inactive status would be appropriate where an attorney's mental incompetence rendered him or her unable to form the intent that is an element of the offenses charged. Petitioner has offered no evidence that his drug habit made him incompetent in this sense.

■ However, given the lack of evidence pertaining to the circumstances surrounding the section 4390 violation, we cannot find the charges of unprofessional conduct are sustained by convincing proof and to a reasonable certainty and we cannot accept a recommendation of disbarment in Bar Misc. No. 4306 (*Furman* v. *State Bar* (1938) 12 Cal.2d 212 [83 P.2d 12].)

The State Bar's recommendation may have been based on its perception of petitioner's course of conduct beginning with drug use in 1977 and culminating in the commission of the homicide for which he was convicted of manslaughter. The State Bar was not authorized to recommend discipline based on the manslaughter conviction however. Moreover, petitioner forwent the opportunity to present argument or evidence in mitigation of any recommended discipline in apparent reliance on the assurance that discipline would not be recommended.

We find probable cause to believe the offenses of voluntary manslaughter and assault with a deadly weapon involved moral turpitude. Petitioner is suspended from the practice of law in California pending final disciplinary action in Bar Misc. No. 4304.

We find that the report and recommendation in Bar Misc. No. 4306 support neither interim suspension nor imposition of final discipline. Both matters are referred to the State Bar for a hearing and report on discipline pursuant to section 6102, subdivision (b).

Richardson, J., concurred in the result.