[No. S006888. July 27, 1989.]

WILLIAM JORDAN CHADWICK, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Seth M. Hufstedler, Otto M. Kaus and Dan Marmalefsky for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., Richard J. Zanassi and Dominique Snyder for Respondent.

OPINION

THE COURT.—We review the recommendation of the Review Department of the State Bar Court that petitioner, William Jordan Chadwick, be suspended from the practice of law following his misdemeanor conviction

for violating federal statutes prohibiting insider trading, and for related misconduct.

The review department (the department), by a vote of ten to two, recommended that petitioner be suspended from the practice of law for a period of five years; that execution of the suspension be stayed; and that he be placed on probation for five years subject to certain conditions including two years' actual suspension.[1] The department by a vote of 11 to 1 found that petitioner had committed acts which involved moral turpitude, and adopted the hearing panel's findings of fact and conclusions of law with modifications. The hearing panel, comprised of a single referee, had found that petitioner's conduct did not involve moral turpitude and recommended that no discipline be imposed.

Petitioner asks this court to reject the department's recommendation. Petitioner contends that the department made erroneous findings on the issue of moral turpitude, ignored compelling mitigating circumstances, repudiated the proper purposes of State Bar discipline, and recommended grossly excessive discipline.

After considering the record and the arguments of petitioner and the State Bar, we adopt the department's recommendations, except that we impose only one-year actual suspension.

## I. FACTS

Petitioner was admitted to the practice of law in California in December 1973. Formerly he was a partner in a large firm. Petitioner is currently a sole practitioner, primarily rendering legal advice about alternative investment structures. He has no prior record of discipline.

The facts and circumstances surrounding petitioner's misconduct were set forth in a stipulation entered into by petitioner, his attorney and the State Bar. The stipulation as to these facts was also adopted by the hearing panel and the department. In summary, petitioner's misconduct began in December 1981 when he acquired material, nonpublic information regarding a tender offer involving the Brunswick Corporation from a Martin

---

[1] The department further included conditions of probation that petitioner (1) comply with the provisions of the State Bar Act and Rules of Professional Conduct, (2) file quarterly reports attesting to his having complied with the provisions of the State Bar Act and Rules of Professional Conduct, (3) report to a probation monitor, (4) take and pass the Professional Responsibility Examination prior to the expiration of the period of actual suspension, and (5) comply with rule 955, California Rules of Court and perform the acts specified in subdivisions (a) and (c) therein.

Cooper. Cooper was an assistant vice president of Bankers Trust Company, and served as a loan officer and banker for the Whittaker Corporation. The Whittaker Corporation was the company attempting to take over the Brunswick Corporation. Petitioner used this information for financial profit by purchasing stock options of the Brunswick Corporation for himself. In January 1982, petitioner contacted James Hutchinson, a former coworker. Petitioner shared the nonpublic information with Hutchinson, and suggested that they purchase more options on a 50/50 partnership basis. Hutchinson agreed and purchased Brunswick options on behalf of the partnership. On January 25, 1982, the takeover of Brunswick by the Whittaker Corporation was publicly announced.

Thereafter, petitioner and Hutchinson agreed to lie to the Securities and Exchange Commission (SEC) to conceal the fact that Hutchinson had purchased the options as a result of material, nonpublic information. Hutchinson subsequently lied under oath to the SEC on February 2, 1982, and then again on February 16, 1982, and informed petitioner that he did so. On February 16, 1982, petitioner himself was contacted by the SEC and lied to the SEC, denying that he and Hutchinson had ever spoken in connection with the purchase of Brunswick options. Following this conversation, petitioner informed several of his law partners at that time that he had been untruthful in his answers to the SEC. He then determined to "correct" his statement to the SEC and sought counsel. In March 1982, at petitioner's request, counsel for petitioner and counsel for Hutchinson notified the SEC that they desired a meeting. At that meeting, counsel informed the SEC that petitioner and Hutchinson had relied upon material, nonpublic information concerning the Brunswick tender offer and that petitioner had lied in his earlier conversation with the SEC.

On July 16, 1982, the United States District Court filed a final order prohibiting petitioner from engaging in any further securities laws violations and ordering him to disgorge profits of $57,310.49 made as a result of the illegal stock purchase. Petitioner was then charged with one misdemeanor count of having violated 15 United States Code sections 78n(e) and 78ff, and 17 Code of Federal Regulations section 240.14e-3 in that he made an illegal purchase or sale of securities subject to an undisclosed tender offer. Petitioner pled guilty to the count as charged and was fined $10,000 with no period of incarceration or probation.[2]

## II. STATE BAR PROCEEDINGS

On January 22, 1987, the State Bar issued a notice to show cause charging petitioner with violating Business and Professions Code sections 6068

---

[2] Hutchinson's participation in the scheme resulted in his misdemeanor conviction under the same law. He was also ordered to disgorge profits of $72,000.

(duties of attorney) and 6103 (violation of oath or attorney's duties). The State Bar further charged that petitioner willfully committed acts involving moral turpitude within the meaning of Business and Professions Code section 6106.[3] These charges were based on three separate acts: petitioner's illegal purchase of stock options, his agreement to lie to the SEC, and his actual lie to the SEC. The State Bar alleged that each of these acts involved moral turpitude. A hearing was held before a one-member hearing panel which adopted the stipulation as to the facts and circumstances surrounding the case.

To highlight, petitioner testified before the hearing panel that at the time of his testimony, he considered his insider trading to be an act of dishonesty and theft because he was stealing from other investors. He stated that at the time of the conduct, however, he did not consider the conduct to involve dishonesty or theft. He also testified to demonstrate relevant factors in mitigation. He said that he recognized his conduct was wrong and that he attempted immediately to correct his untruthful statement to the SEC. Petitioner further testified that prior to his conversation with the SEC he did not believe that he had violated the law, and that his agreement to lie for Hutchinson was due to a "misguided sense of loyalty." Finally, petitioner testified that he is remorseful, regrets his acts and believes that there is no possibility that he would ever become involved in a similar situation.

The hearing panel heard testimony from four character witnesses who testified as to petitioner's honesty and integrity and their belief that he would not engage in similar misconduct. The record of the hearing also contains letters in support of petitioner from the Solicitor of Labor in the Department of Labor, the attorney who prosecuted petitioner's federal trial and one of petitioner's major clients.

The hearing referee found petitioner culpable of the facts set forth in the stipulation but concluded, as stated above, that petitioner's misconduct did not involve moral turpitude. The referee concluded that in light of the strong factors of mitigation present, no discipline was warranted.

The department, however, found that petitioner committed three separate acts of moral turpitude and dishonesty, as alleged by the State Bar, and additionally deleted several of the findings set forth in the hearing panel's decision.[4] Those factors were deleted for a variety of reasons, which includ-

---

[3] For reasons that are not apparent, plaintiff's criminal conviction was never the subject of a conviction referral proceeding pursuant to Business and Professions Code sections 6101 and 6102 and rule 951, California Rules of Court. This is an original State Bar proceeding.

[4] Petitioner contends that six of the hearing panel's findings deleted by the department are supported by the weight of evidence. Those findings are: (1) that petitioner had no knowledge

ed that they were clearly erroneous, against the weight of evidence, lacked evidentiary support, did not constitute mitigation or were conclusions and not findings of fact.[5] Then, as stated above, the department recommended discipline of five years' suspension, stayed, with two years' actual suspension. The department noted that except for the fact that petitioner had made attempts to rectify his misconduct prior to the SEC's discovery, the recommended discipline would have been disbarment.

## III. DISCUSSION

While we give great weight both to the department's disciplinary recommendation (*In re Severo* (1986) 41 Cal.3d 493, 500 [224 Cal.Rptr. 106, 714 P.2d 1244]) and the hearing panel's factual findings (*In re Kreamer* (1975) 14 Cal.3d 524, 532, fn. 5 [121 Cal.Rptr. 600, 535 P.2d 728]), we independently review the record and exercise our own judgment in determining the appropriate discipline to be imposed (*Greenbaum* v. *State Bar* (1987) 43 Cal.3d 543, 550 [237 Cal.Rptr. 168, 736 P.2d 754]; *In re Chira* (1986) 42 Cal.3d 904, 909 [231 Cal.Rptr. 560, 727 P.2d 753]). Petitioner bears the burden of showing that the department's findings are not supported by the record (*Smith* v. *State Bar* (1985) 38 Cal.3d 525, 538-539 [213 Cal.Rptr. 236, 698 P.2d 139]), or that the department's recommendation is erroneous or unlawful (Bus. & Prof. Code, § 6083, subd. (c); *Trousil* v. *State Bar* (1985) 38 Cal.3d 337, 341 [211 Cal.Rptr. 525, 695 P.2d 1066]).

Whether the facts and circumstances of petitioner's misconduct constitute moral turpitude is a question of law to be determined by this court. (See *In re Strick* (1983) 34 Cal.3d 891, 901 [196 Cal.Rptr. 509, 671

---

of the existence of the federal regulation he violated; (2) that he returned all the profits he had made illegally as ordered by the federal court; (3) that his untruthful statement to the SEC was made as a result of a mistaken sense of loyalty to Hutchinson; (4) that his conduct was an aberration from his normal law-abiding conduct; (5) that he demonstrated that he has been rehabilitated; and (6) that he is suited to practice law.

[5] The department inexplicably did not delete finding of fact number 1, which states: "This matter arises out of the State Bar's desire to discipline Respondent [Chadwick] for innocently entering into a transaction which violated a Security Exchange [*sic*] Commission regulation; his fleeting argument to conceal the transaction; and his single naive misrepresentation of the transaction."

However, the department specifically stated that it was making a different disciplinary recommendation because: "Respondent [Chadwick] committed three separate acts of moral turpitude. His purchase of stock options using non-public information was a fraudulent, manipulative and deceptive act done for reasons of personal gain. His agreement to lie to the SEC was a dishonest attempt to obstruct a lawful government investigation. His own lie to the SEC was, itself, a dishonest act. Respondent's 'mistaken loyalty' defense ignores the fact that it was the Respondent who, for his own personal gain, induced Mr. Hutchinson to participate in the fraudulent scheme. [¶] The Review Department believes that Respondent's acts are of the kind that cause serious injury to the public's confidence in our system and in our profession."

P.2d 1251]; *In re Higbie* (1972) 6 Cal.3d 562, 569 [99 Cal.Rptr. 865, 493 P.2d 97].) ■ As we have noted on numerous occasions, the concept of moral turpitude escapes precise definition. (See *In re Strick, supra,* 34 Cal.3d 891, 901.) Moral turpitude has been described as an "act of baseness, vileness or depravity in the private and social duties which a man owes to his fellowmen, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." (*In re Craig* (1938) 12 Cal.2d 93, 97 [82 P.2d 442].) It has been described as any crime or misconduct without excuse (*In re Hallinan* (1954) 43 Cal.2d 243, 251 [272 P.2d 768]) or any dishonest or immoral act. The meaning and test is the same whether the dishonest or immoral act is a felony, misdemeanor, or no crime at all. (1 Witkin, Cal. Procedure (3d ed. 1985) § 375, p. 425.)

■ A criminal conviction, including a plea of guilty, is conclusive proof that the attorney committed all acts necessary to constitute the offense. (*In re Ford* (1988) 44 Cal.3d 810, 815 [244 Cal.Rptr. 476, 749 P.2d 1331].) A final judgment of conviction of a crime involving moral turpitude is cause for suspension or disbarment. (Bus. & Prof. Code, §§ 6101, subd. (a), 6102, subd. (d).) ■ Crimes which necessarily involve an intent to defraud, or dishonesty for personal gain, such as perjury (*In re Kristovich* (1976) 18 Cal.3d 468, 472 [134 Cal.Rptr. 409, 556 P.2d 771]), grand theft (*In re Basinger* (1988) 45 Cal.3d 1348, 1358 [249 Cal.Rptr. 110, 756 P.2d 833]) and embezzlement (*In re Ford, supra,* 44 Cal.3d at p. 813) may establish moral turpitude.[6]

Petitioner argues first that his purchase of Brunswick options was not an act of moral turpitude because he lacked knowledge of the SEC regulations when he engaged in the illegal trading. Although he acknowledges his conviction of that crime, he characterizes his crime as only a technical violation of a minor regulation.

Even if petitioner's ignorance of the SEC regulation is assumed, petitioner's own stipulation establishes that he pled guilty to a violation of 17 Code of Federal Regulations section 240.14e-3, namely, having willfully engaged in a fraudulent, deceptive or manipulative act or practice. Since petitioner was convicted of a crime requiring the element of fraudulent conduct, and such conviction is conclusive proof that petitioner committed the elements necessary to constitute the offense (*In re Ford, supra,* 44 Cal.3d 810, 815), we agree with the department's finding that petitioner's act involved moral turpitude.

Petitioner next argues that his agreement with Hutchinson to lie to the SEC did not involve moral turpitude. He urges us to examine his motivation

---

[6]See also our discussion in *In re Rothrock* (1940) 16 Cal.2d 449, 454 [106 P.2d 907, 131 A.L.R. 226].

in conspiring to lie to the SEC, and argues that the agreement was made out of a "mistaken sense of loyalty" to Hutchinson. We agree that it was mistaken. Petitioner stipulated that he suggested to Hutchinson that Hutchinson purchase Brunswick options on his and Hutchinson's behalf and that Hutchinson actually bought such options on their behalf. Petitioner also stipulated that he and Hutchinson agreed to lie to the SEC to conceal the fact that Hutchinson had purchased the Brunswick options based upon nonpublic information he received from petitioner. Any sense of loyalty that may have motivated petitioner to make this agreement was certainly mistaken. This agreement was a dishonest attempt to obstruct a lawful government investigation, and is the kind of dishonest or immoral act that the concept of moral turpitude contemplates. We agree with the department that this agreement to lie to the government also involved moral turpitude.

Petitioner also argues that his actual lie to the SEC did not involve moral turpitude. He contends we must consider the totality of his conduct surrounding the lie, including his "immediate" decision to inform the SEC of the truth and that this conduct indicates a lack of moral turpitude. Again, however, the facts to which petitioner stipulated undermine his argument. In furtherance of his agreement with Hutchinson, petitioner actually lied to the SEC attorney by denying that he and Hutchinson had spoken in connection with the price of options. Petitioner did not attempt to contact the SEC for two months after his agreement with Hutchinson, and for one month after his actual lie to the SEC. While we consider petitioner's later attempt to correct the error of his ways after his lie to the SEC as a mitigating factor, we agree with the department's finding that this act was dishonest, despite his subsequent actions. Because this was a dishonest act in furtherance of personal financial gain, we again recognize the presence of moral turpitude.

■ Having concluded that the evidence supports the department's findings, we determine whether the recommended discipline is appropriate based upon our review of the facts and circumstances surrounding this case. (*In re Ford, supra,* 44 Cal.3d at p. 815.) ■ " 'Our principal concern is always the protection of the public, the preservation of confidence in the legal profession, and the maintenance of the highest possible professional standard for attorneys.' " (*Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 132 [202 Cal.Rptr. 349, 680 P.2d 82], quoting *Jackson* v. *State Bar* (1979) 23 Cal.3d 509, 514 [153 Cal.Rptr. 24, 591 P.2d 47].)

■ As the department recognized, petitioner did make a strong showing of mitigation. First and foremost, it was petitioner who came forward to

the SEC and convinced Hutchinson to do the same. ██ ██ [7.], ██ This was commendable action. Standard 1.2(e)(v)[7] embraces spontaneous candor and cooperation to victims of misconduct and to the State Bar as mitigation. By analogy we consider petitioner's cooperation with the SEC and the State Bar as a mitigating factor.

Second, we believe based on his testimony and actions that petitioner is remorseful and recognizes his wrongdoing. We consider this to be mitigating under standard 1.2(e)(vii).

Third, there has been the passage of considerable time since his misconduct in 1982 and petitioner has not committed misconduct since that time. We consider this a mitigating factor under standard 1.2(e)(viii).

Fourth, we also note that petitioner has no prior record of discipline since being admitted to the bar in 1973. This is another mitigating factor that we consider. (Std. 1.2(e)(i).)

And lastly, we consider that a number of character witnesses testified as to petitioner's general honesty and integrity. This is a mitigating factor under standard 1.2(e)(vi).

Since we find that petitioner committed a crime of moral turpitude as well as two other acts of moral turpitude, we would almost certainly disbar petitioner under most circumstances. However, we find petitioner's showing of mitigating circumstances—particularly his coming forward to the SEC—to be compelling. Thus, instead of disbarment, we impose one-year actual suspension. This is necessary to insure "the protection of the public, the courts and the legal profession" and "the maintenance of high professional standards by attorneys and the preservation of public confidence in the legal profession." (Std. 1.3.)

## IV. DISPOSITION

Having independently reviewed the record (*Bach* v. *State Bar* (1987) 43 Cal.3d 848, 855 [239 Cal.Rptr. 302, 740 P.2d 414]) we adopt the recommendation of the department, except that we impose one-year actual suspension. Accordingly, petitioner William Jordan Chadwick shall be suspended from the practice of law for a period of five years with execution of suspension stayed. Petitioner shall be placed on probation for that period subject to the conditions of probation set forth by the department, including actual suspension of one year. Additionally, petitioner must comply with the pro-

---

[7] We are guided, although we are not bound, by the Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V) in making our determination. All further references to standards are to this source.

visions of the State Bar Act and Rules of Professional Conduct, file quarterly reports attesting to his having complied with the provisions of the State Bar Act and Rules of Professional Conduct, report to a State Bar probation monitor, and take and pass the Professional Responsibility Examination prior to the expiration of the period of actual suspension. He is also ordered to comply with rule 955, California Rules of Court, and to perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the date this order is effective. This order is effective upon finality of this decision in this court. (See Cal. Rules of Court, rule 24(a).)

Petitioner's application for a rehearing was denied September 6, 1989.