Filed 10/27/22

# CERTIFIED FOR PARTIAL PUBLICATION*

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | B317640 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A532898) |
| v. | |
| MICHAEL DURAN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mike Camacho, Judge. Affirmed.

Randy S. Kravis, under appointment by the Court of Appeal, for Defendant and Appellant.

---

\* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication as to all parts except part II of the Discussion.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

A defendant convicted of second degree murder in 1984 for a gang-related stabbing petitioned for relief under Penal Code section 1172.6 (former section 1170.95),[1] and proceeded to an evidentiary hearing. The People introduced statements the defendant made to a psychologist in 2013 during a parole risk assessment interview. The defendant argues that admitting his prior statements was error because those statements are (1) inadmissible under a judicially crafted "use immunity" doctrine, and (2) involuntary under the due process clause. So far, three courts have rejected the first argument. (See *People v. Myles* (2021) 69 Cal.App.5th 688, 704-706 (*Myles*); *People v. Anderson* (2022) 78 Cal.App.5th 81, 88-93 (*Anderson*); *People v. Mitchell* (2022) 81 Cal.App.5th 575, 580-581 (*Mitchell*).) We join these courts, and publish because we walk a different path to get there. Because, in the unpublished portion of this opinion, we also conclude that the defendant's statement was in no sense involuntary, we affirm the trial court's denial of relief.

---

1    Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) For the sake of simplicity, we will refer to the section by its new numbering.

All further statutory references are to the Penal Code unless otherwise indicated.

2

## FACTS AND PROCEDURAL BACKGROUND

### I.    The Underlying Murder

In 1984, Michael Duran (defendant) was a member of the El Monte Flores street gang who went by the moniker "Tiger" or "Tigre."

In the early morning hours of a Sunday in August 1984, a fight broke out between members of the El Monte Flores gang and its rival, the El Sereno gang.  In retaliation, members of the El Monte Flores gang stormed a complex of apartments built around a courtyard.  Defendant accompanied those gang members.  While there, defendant grabbed James Torres (Torres) from behind, and took him to the ground.  In the ensuing melee between Torres, defendant, and three other El Monte Flores gang members, Torres was punched, kicked, and repeatedly stabbed by two different knives.  Torres sustained 20 stab wounds and died from those injuries.

### II.    Charging, Conviction and Sentencing

The People charged defendant and the three other El Monte Flores gang members in the melee with Torres's murder (§ 187).  The People further alleged that each of the defendants personally used a deadly or dangerous weapon (that is, a knife) (§ 12022, subd. (b)).

The matter proceeded to a joint jury trial.

Two percipient witnesses testified to defendant's role in the melee with Torres.[2]  Sharon Noble (Noble) testified that she saw

---

[2]    Another witness testified that defendant subsequently confessed to stabbing Torres, but the jury necessarily rejected this testimony when it subsequently found "not true" the allegation that defendant *personally* used a dangerous or deadly weapon.  As discussed below, the trial court adjudicating

defendant pull Torres backwards and to the ground, at which point the group of El Monte Flores gang members started kicking, punching, and stabbing Torres. Alfredo Hernandez (Hernandez) testified to seeing the same.

The trial court instructed the jury on the crimes of first and second degree murder, voluntary manslaughter due to heat of passion, and involuntary manslaughter due to imperfect self-defense. The court instructed the jury that defendant could be convicted of first degree murder on the basis of the felony-murder rule, and could be convicted of second degree murder as (1) the actual killer, (2) a person who directly aided and abetted the actual killer in murdering Torres, or (3) a person who directly aided and abetted the actual killer in committing other crimes (including assault), of which murder was a natural and probable consequence.

The jury convicted defendant of second degree murder with a general verdict, but found not true the allegation that defendant personally used a dangerous and deadly weapon.

The trial court sentenced defendant to prison for 15 years to life.

We affirmed defendant's conviction and sentence. (*People v. Duran* (Mar. 27, 1987, B017105) [nonpub. opn.].)

## III.   Section 1172.6 Petition

In February 2019, defendant filed a petition seeking resentencing under section 1172.6. Along with his petition, defendant filed a declaration attesting, "under penalty of perjury," that he was "qualif[ied] to be resentenced" under section 1172.6 "because [his] murder conviction is invalid due to changes

---

defendant's section 1172.6 petition also found this witness not to be credible.

4

to Penal Code §188 and 189 made effective January 1, 2019." Because, as discussed below, a person convicted as a direct aider and abettor is *not* qualified to be resentenced under section 1172.6, defendant's declaration necessarily constituted a sworn statement that he was *not* a direct aider and abettor in Torres's murder.

The matter (eventually) proceeded to an evidentiary hearing.[3]

At the hearing, the People introduced defendant's statements from a January 2013 interview with a psychologist who was responsible for drafting a comprehensive risk assessment for an upcoming parole hearing. Before the interview, defendant was "informed" that the interview was "not confidential," and that "he had a right not to participate in the examination." Defendant agreed to be interviewed. Defendant told the psychologist that when he learned that El Monte Flores "homeboys" were getting beaten up, he eventually told his fellow gang members, "Fuck it. Let's go!" to the location of that melee; that defendant and other El Monte Flores gang members entered the apartment complex across from the park; that defendant shouted "Tiger Monte Flores" while inside the complex; that defendant, after almost getting into a fist fight with someone in the complex, ran out of the complex and into the street to yell "[N]ow let's kill these mother fuckers"; and that defendant then tossed a few empty beer bottles at the complex before departing in a car when the police arrived.

---

[3] The trial court had summarily denied defendant's petition, but we reversed the summary denial and remanded for an evidentiary hearing. (*People v. Duran* (May 7, 2020, B297673) [nonpub. opn.], pp. 2, 7.)

Defendant then took the stand. He testified that after learning that his "little homies" were getting assaulted in the park, he said, "Fuck it. Let's go." He testified that he ran inside the apartment complex and was challenged to a fistfight, but rather than fight, ran to the complex's main exit and shouted, "Tigre, Monte Flores." Then he ran into the street outside the complex and yelled, "Now let's kill these mother fuckers," but insisted that "nobody" was in earshot and that he was merely shouting at the "wind." He denied ever forming the "intention of killing anybody."

The trial court denied the petition after finding, beyond a reasonable doubt, that defendant was liable under the still-valid theory of being a direct "aider and abettor" to Torres's murder "who acted with the requisite intent to kill." The court found "overwhelming" evidence that defendant had *acted* to aid and abet Torres's murder because the trial testimony of Noble and Hernandez established defendant's role in bringing Torres down and assisting the others with their group assault of Torres. The court also found that defendant had undertaken those acts with the *intent to kill* because (1) there was *direct* evidence of intent, because he yelled, "Let's kill these mother fuckers," which the trial court found defendant had yelled *at the outset* of the assault on the apartment complex (rather than, as defendant testified, at the very end and to no one), and (2) there was *circumstantial* evidence of intent, because a person like defendant, who was "embedded in that gangster lifestyle," would not have gone to the apartment complex to rescue younger gang members and to "support his gang" without knowing at least some of his compatriots were armed, and because his acts of assistance—

6

taking someone down and participating in the collective assault—were done with the intent to kill.

Defendant filed this timely appeal.

## DISCUSSION

Defendant argues that the trial court erred in denying his section 1172.6 petition because its ruling was infected by its wrongful admission of his 2013 interview statement. Specifically, defendant argues that the statement should have been excluded because (1) he made the statement in anticipation of an upcoming parole hearing, such that the People should be barred from using it in the section 1172.6 proceeding under a judicially created "use immunity" doctrine, and (2) the statement is involuntary under the due process clause.

Our Legislature enacted what is now section 1172.6 and simultaneously amended sections 188 and 189 in order to eliminate criminal liability for murder, attempted murder, and manslaughter absent a showing of the defendant's *personal* intent; no longer can a conviction for these crimes rest on notions of vicarious intent—that is, on the imputation of *someone else's* intent to the defendant based solely on the defendant's "participation in a crime." (§§ 188, 189, 1172.6, subd. (a).) Now, a conviction for these crimes requires proof that the defendant (1) was the actual killer (who acted with the requisite express or implied malice), (2) directly aided and abetted the actual killer while acting with the intent to kill, or (3) was a major participant in a felony who acted with reckless indifference to the value of human life. (§§ 188, 189.) While the amendments to sections 188 and 189 narrow the elements of murder prospectively, section 1172.6 is the statutory mechanism for determining whether to *retroactively* vacate a final murder, attempted murder, or

7

manslaughter conviction that does not comply with the new, narrower definitions. A defendant seeking relief under section 1172.6 must "file a petition" alleging entitlement to relief along with "[a] declaration" attesting to eligibility for relief. (§ 1172.6, subds. (a) & (b)(1)(A).) If the defendant "makes a prima facie showing" of entitlement to relief (that is, if the record of conviction does not establish ineligibility for relief as a matter of law), then the court must in most cases convene an evidentiary hearing where the People bear the burden of establishing beyond a reasonable doubt that the defendant is guilty of the pertinent crime under the new, narrower definitions. (§ 1172.6, subds. (c) & (d).) At that evidentiary hearing, the court may consider "evidence previously admitted at any prior hearing or trial" that is admissible under current law, as well as "new or additional evidence" that is admissible under current law. (§ 1172.6, subd. (d)(3).) If the People "fails to sustain its burden of proof" at the evidentiary hearing, *then* the conviction must be "vacated" and the defendant resentenced. (§ 1172.6, subd. (d)(3).)

It is well settled that a parole risk assessment report, including a defendant's statements in that report, falls within the ambit of "new or additional evidence." (*Myles*, *supra*, 69 Cal.App.5t at pp. 698, 703; *Mitchell*, *supra*, 81 Cal.App.5th at p. 586.) The admission of evidence is usually reviewed for an abuse of discretion (*People v. Dworak* (2021) 11 Cal.5th 881, 895), but a court abuses its discretion when it misapprehends the pertinent law (*Prigmore v. City of Redding* (2012) 211 Cal.App.4th 1322, 1334). Whether use immunity exists and whether a statement is involuntary within the meaning of due process are questions of law we review de novo. (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 383, fn. 8 [questions of law on undisputed facts];

*People v. McCurdy* (2014) 59 Cal.4th 1063, 1086 [involuntariness].)

Because defendant did not object to the admission of his 2013 statement on either ground that he now advances on appeal—use immunity or involuntariness—he has forfeited these arguments. (*People v. Anderson* (2001) 25 Cal.4th 543, 586; Evid. Code, § 353, subd. (a).) However, we have the discretion to disregard the forfeiture and reach the merits, and elect to do so here.

## I. Use Immunity

Defendant argues that the People should be barred from using his 2013 statement from the parole risk assessment report against him at the section 1172.6 evidentiary hearing because a judicially fashioned doctrine of "use immunity" precludes prosecutors from using, at a subsequent proceeding, a defendant's earlier statements that were made under circumstances where the defendant had little choice but to speak. In support, defendant cites the seeming progenitor of this line of cases in California, *People v. Coleman* (1975) 13 Cal.3d 867 (*Coleman*), as well as subsequent cases that apply *Coleman* in a variety of other contexts. Defendant urges that this line of cases should be extended to the situation presented in this case.

In our view, defendant reads *Coleman* and its progeny too broadly.

In *Coleman*, the defendant committed a criminal act, and the People charged the same act as a violation of his current probation *and* as the basis for a separate prosecution. After defendant testified at his probation violation hearing, the People sought to use that testimony at the subsequent trial in its case in chief. *Coleman* held this was impermissible: "We . . . declare as a

judicial rule of evidence that . . . the testimony of a probationer at a probation revocation hearing held prior to the disposition of criminal charges arising out of the alleged violation of the conditions of his probation, and any evidence derived from such testimony, is inadmissible against the probationer during subsequent proceedings on the related criminal charges." (*Coleman*, *supra*, 13 Cal.3d at p. 889.)

*Coleman* explicitly rested its holding on two "policies underlying the privilege against self-incrimination." (*Coleman*, *supra*, 13 Cal.3d at p. 875.) If prosecutors were able to use a defendant's probation revocation testimony to prove his guilt at a subsequent trial for the very same conduct, the People's constitutionally mandated burden of proof would be "substantially lightened." (*Id.* at pp. 875-876.) This would put a defendant to an unfair choice: Give up the "opportunity to be heard" at the probation revocation hearing by remaining silent; be heard at the probation revocation hearing by testifying truthfully, thereby incriminating himself because that testimony could be used against him to prove his guilt at the subsequent trial; or "testify falsely" at the probation revocation in a way "which will not damage his defense at [the] subsequent criminal trial." (*Id.* at p. 878.) "To force an individual to choose one of three such unpalatable alternatives," *Coleman* reasoned, "runs counter to our historic aversion to cruelty reflected in the privilege against self-incrimination." (*Ibid.*) *Coleman*'s rationale mirrored the rationale of *Simmons v. United States* (1968) 390 U.S. 377, which *Coleman* cited. *Simmons* held that a defendant's testimony to establish standing to challenge a search at a suppression hearing could not be used at the subsequent criminal trial; if denied use immunity for any testimony offered at the

10

suppression hearing, *Simmons* reasoned, a defendant would be put to the "intolerable" choice of being forced to "give up what he believed . . . to be a valid Fourth Amendment claim [by foregoing testifying to his standing at the suppression hearing] or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination" by testifying at the suppression hearing but having that testimony used to prove his guilt at a later trial. (*Id.* at p. 394.)

The cases applying *Coleman*'s use immunity are similarly limited to situations where a defendant's prior statements might be later used against him *in a manner that offends the privilege against self-incrimination.* This is why the People may not use the statements a defendant made (even if the defendant waives the attorney-client privilege that might attach to those statements) in support of a motion for new trial *at the subsequent retrial* that occurs after the new trial motion is granted. (*People v. Dennis* (1986) 177 Cal.App.3d 863, 873-876; *People v. Ledesma* (2006) 39 Cal.4th 641, 692-695.) It is why the People may not use the statements a defendant made (even if the defendant waives the attorney-client privilege that might attach to those statements) at a pretrial hearing challenging the competency of his appointed counsel *at the subsequent trial.* (*People v. Knight* (2015) 239 Cal.App.4th 1, 5-8.) It is why the People may not use a juvenile defendant's statements made at a fitness hearing *at the subsequent juvenile adjudication trial.* (*Ramona R. v. Superior Court* (1985) 37 Cal.3d 802, 806-811.) And it is why the People may not use a parent-defendant's statements made during juvenile dependency proceedings for child neglect *at the subsequent trial* for child abuse arising out of the same neglect. (*In re Jessica B.* (1989) 207 Cal.App.3d 504, 520-521.)

11

We conclude there are two reasons why this brand of use immunity does not apply to bar the use of a defendant's prior statements in a parole risk assessment at a subsequent section 1172.6 evidentiary hearing.

First, and as *Myles*, *Anderson*, and *Mitchell* have all recognized, the use of a defendant's statements at a subsequent section 1172.6 evidentiary hearing does not implicate the privilege against self-incrimination. By its plain text, the privilege applies only during a "criminal case" or "cause." (U.S. Const., amend. V; Cal. Const., art. I, § 15; *Speilbauer v. County of Santa Clara* (2009) 45 Cal.4th 704, 714 [privilege applies where person "reasonably believes the answers might incriminate him or her *in a criminal case*"], italics added.) Once a defendant's "sentence has been fixed and the judgment of conviction has become final," the "general rule" is that "there can be no further incrimination" and hence "no basis for the assertion of the privilege." (*Mitchell v. United States* (1999) 526 U.S. 314, 326; accord, *In re Strick* (1983) 34 Cal.3d 891, 899 ["a witness retains the privilege against self-incrimination during the pendency of an appeal," and hence up until a judgment is "final"].) Although the United States Supreme Court has suggested that the privilege ceases at the time a judgment of conviction becomes final, the Ninth Circuit Court of Appeals has carved out an exception to that rule: If a final judgment is overturned on collateral review, use immunity attaches to bar the use of statements the defendant made during that collateral review *at any subsequent retrial or sentencing* on the overturned convictions. (See, e.g., *Lambright v. Ryan* (9th Cir. 2012) 698 F.3d 808, 823-824; *Milke v. City of Phoenix* (D. Ariz. 2018) 325 F.Supp.3d 1008, 1014-1015 [following *Lambright*].)

12

Even if we assume that the Ninth Circuit is merely tweaking the edges of the United States Supreme Court's precedent rather than impermissibly ignoring it, the section 1172.6 evidentiary hearing where defendant's 2013 parole risk assessment statement was used is, contrary to what defendant argues, neither a subsequent retrial nor a new sentencing. Although the People at a section 1172.6 evidentiary hearing bear the burden of proving beyond a reasonable doubt that the defendant is not eligible for relief under section 1172.6, it is only "if"—and hence only *after*—"the prosecution fails to sustain its burden of proof" that "the prior conviction" "shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1172.6, subd. (d)(3); accord, *id.*, subd. (d)(2) [specifying one situation where evidentiary hearing may be bypassed so that court may "vacate" the final conviction and "resentence" the defendant].) During the hearing itself, a defendant's final judgment of conviction is still intact. (E.g., *People v. Burhop* (2021) 65 Cal.App.5th 808, 815 ["Until a section [1172.6] petition is filed and adjudicated, . . . the petitioner's existing judgment of conviction and sentence remains presumptively authorized and unaffected by [section 1172.6]."].) This is no doubt why the panoply of rights that attach at trial do *not* apply during a section 1172.6 evidentiary hearing, such as the right to a jury trial or the protection against double jeopardy. (*Mitchell*, *supra*, 81 Cal.App.5th at pp. 588-589 [collecting cases].) As a result, use of a defendant's prior statements during such an evidentiary hearing does not implicate the privilege against self-incrimination, and *Coleman*'s core rationale—and hence its holding—is not implicated.[4] Presiding Justice Stratton's dissent

---

4      Whether a defendant's statements during a parole risk

13

in *Mitchell* would apply use immunity during a section 1172.6 evidentiary hearing because, in her view, "[t]he use of [a defendant's] statements" at such a hearing is "fundamentally unfair," which she views as "the only rationale upon which *Coleman* is based." (*Mitchell*, at p. 604 (dis. opn. of Stratton, P.J.).) We respectfully disagree, because what made the use of a defendant's statements in *Coleman* unfair was putting the defendant in the untenable position of having to forfeit his privilege against self-incrimination *at a subsequent trial or sentencing* where the privilege applies, as the price for exercising a different right; absent a potential violation of the privilege, any unfairness is insufficient to justify the judicial creation of use immunity. (Accord, *People v. Collins* (1986) 42 Cal.3d 378, 386 ["*Coleman* . . . [was] concerned with protecting a fundamental constitutional right—freedom from self-incrimination during a criminal trial."].)

Second, and as *Coleman* made clear, the use immunity it acknowledged does not apply when a defendant's prior statements are to be introduced "for purposes of impeachment" because the privilege against self-incrimination "does not . . . encompass a right of an accused to lie." (*Coleman*, *supra*, 13 Cal.3d at pp. 889, 892.) Here, defendant's petition for relief under section 1172.6 was accompanied by his sworn declaration that he was "qualif[ied] to be resentenced" under section 1172.6 because his conviction was invalid under the current murder

---

assessment may be used at a subsequent retrial or resentencing should the defendant's section 1172.6 petition be granted is a question that more closely parallels the Ninth Circuit precedent, but is not implicated in this case where the petition has *yet to be granted*. We accordingly offer no opinion on that issue.

14

statutes. In other words, defendant offered his own sworn testimony that he was *not* a direct aider and abettor to Torres's murder, and hence did not act with the intent to kill. Defendant's statements in the 2013 parole risk assessment report recounting how he yelled, "[N]ow let's kill these mother fuckers" is "clearly inconsistent" with a disclaimer of an intent to kill (*Coleman*, at p. 889), and hence was admissible even if we assume that *Coleman* applies here.[5]

## II. Due Process

Defendant further argues that the statements he made to the psychologist in 2013 are inadmissible at the section 1172.6 hearing because they are involuntary within the meaning of due process. Specifically, he urges that there was a benefit to admitting to his complicity in Torres's murder during his interview with the psychologist in advance of his parole hearing because a defendant's failure to take full responsibility for his crime of conviction—although it cannot be used as a basis for denying parole (§ 5011; 15 Cal. Code Regs., tit. 15, § 2236)—is nevertheless *relevant* to his future dangerousness (*In re Tapia* (2012) 207 Cal.App.4th 1104, 1108, 1112; *In re Swanigan* (2015) 240 Cal.App.4th 1, 14). The existence of this incentive to speak, defendant reasons, rendered his resulting statement involuntary.

Due process bars the admission of an involuntary confession. (*People v. Linton* (2013) 56 Cal.4th 1146, 1176.) For this purpose, "a confession is involuntary if official coercion

---

[5] Defendant does not attack on appeal the trial court's ruling that his 2013 statement is admissible hearsay because (1) his own statement is an adverse party admission (Evid. Code, § 1220), and (2) the 2013 risk assessment report containing his statement is a public record (*id.*, § 1280).

caused the defendant's will to be overborn, such that the resulting statement is not the product of "'"'"a rational intellect and free will."'"'"'" (*People v. Orozco* (2019) 32 Cal.App.5th 802, 819, quoting *Linton*, at p. 1176.) In assessing whether a statement is involuntary, we look to the totality of the circumstances. (*Linton*, at p. 1176.)

Defendant's statement to the psychologist was not involuntary under due process. To begin, defendant was explicitly told that he did *not* have to make a statement. Although he knew he might obtain the benefit of more favorable consideration for parole from doing so, his calculus to make a statement in order to obtain that benefit does not render his statement involuntary. Further, there is a disconnect between this incentive and defendant's actual statement because his statement does *not* admit his complicity in the crime: He merely says he was there and shouted some things; at no point does he admit to having any involvement with Torres's killing. Moreover, a finding that defendant's statement was involuntary means it would have been inadmissible *at the parole hearing itself* because involuntary statements are, by definition, coerced and utterly unreliable. Yet defendant is not asserting that his 2013 interview statement should not have been considered at the parole hearing. At bottom, defendant seems to be urging us to construe the due process clause as a sort of "*super* use immunity" that would, unlike *Coleman*'s use immunity, preclude the use of his prior statement even to impeach. (E.g., *People v. Underwood* (1964) 61 Cal.2d 113, 124 ["involuntary" statements may not be used to impeach because they are inherently unreliable].) We decline to fashion an end-run around *Coleman*'s limitations using a doctrine that, on its own terms, has not been satisfied here.

16

**DISPOSITION**

The order is affirmed.

**CERTIFIED FOR PARTIAL PUBLICATION.**


_____, J.

HOFFSTADT


We concur:


_____, Acting P. J.

ASHMANN-GERST


_____, J.

CHAVEZ

17